## W. J. Merrall et al. *v.* C. W. Dobbins et al., Appellants.

*Partnership—Contract—Lease.*

By an agreement in writing, D. leased a hotel with all the personal property on the premises for three months to G. for twenty thousand dollars, payable in four equal installments. D. was not to be liable for the business done, or for the debts contracted by G. The agreement designated by the parties as a lease, further provided (1) that G. shall give his undivided attention and devote his best energies to the promotion of the business to be done on the said premises; (2) that D. or his representatives shall have the right of free access to the premises at all times;

(3) that in addition to the sum of $20,000 D. shall have eighty per cent of the net profits derived from all of the business done on the premises; (4) that in addition to the current expenses of the hotel and the business done therein there shall be charged to the expense account the cost of insurance, water and sewer rents, license fee, interior repairs, and the salary of a person to be designated by D. who shall keep the books and act as cashier, receive all money, deposit it in his own name, and make all payments; (5) that at the termination of the agreement a statement shall be made of the business done, and that G. shall receive twenty per cent of the net profits; (6) that at the expiration of the lease D. shall pay to G. $1,000, and that D. shall have the right at any time upon twenty-four hours' notice to annul the agreement and assume sole and exclusive possession of the property; (7) that G. shall have absolute control and management of the business during the continuance of the agreement, and assent to a transfer of the license if the agreement shall be annulled. *Held*, that the agreement constituted a partnership between D. and G., as to third parties, and that D. was liable for debts contracted by G. in the conduct of the business.

Argued April 2, 1895. Appeal No. 216, Jan. T., 1895, by defendants, from judgment of C. P. No. 3, Phila. Co., June T., 1894, No. 1224, in favor of plaintiffs on case stated. Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ. Affirmed.

Case stated. The case stated was as follows:

" On the first day of March, 1892, Richard J. Dobbins, deceased, by his attorney, R. P. Dobbins, made and executed the following agreement in writing in the city and state of New York:

" 'This Agreement, made the first day of March, 1892, between Richard J. Dobbins, of Philadelphia, in the State of Pennsylvania, Party of the First Part, and Hugh F. Griffin of the City and State of New York, Party of the Second Part, witnesseth that the said party of the First Part, hereby leases and lets unto the Party of the Second Part, all the certain property known as the Howland Hotel, lawns and outbuildings and rear yard, containing about nine acres of land, in the County of Monmouth, State of New Jersey, at Long Branch, together with all personal property of all kinds and description, now in and upon said property for the term of Three months, commencing on the 15th Day of June next, and ending on the 15th Day of September next for and in consideration of the

rent to be paid by said Griffin, in the manner and at the time hereinafter stated.

" 'It is expressly agreed by the Parties hereto, that said demised premises shall be used solely and exclusively for the purpose of a first class summer Hotel; and that the said Griffin shall give his undivided attention and devote his best energies to the promotion of the business to be done on said premises, and that the Party of the First Part and his representatives shall have the right of free access to said premises at all times.

" ' That as Rent for this Lease, he shall pay at the times hereinafter stated, to the Party of the First Part, the sum total of Twenty Thousand Dollars.

Five Thousand Dollars $5,000, on the 15th of July, 1892.
Five Thousand Dollars $5,000, on the 1st of August, 1892.
Five Thousand Dollars $5,000, on the 15th of August, 1892.
Five Thousand Dollars $5,000, on the 1st of September, 1892.
$20,000 sum total.

" 'And in addition to the above stated $20,000, the Party of the First Part shall receive 80 per cent of the net profits derived from all the business done on said premises.

" 'It is understood that the expenses of said business shall include not only the current expenses of the Hotel, and the business done therein, but shall also include Insurance Premiums for said term upon said personal property located on said premises; the water tax for town water, which may be furnished said premises, the sewer tax for sewer service to be furnished by the Long Branch Sewer Company, the license fee to be charged for the sale of liquors upon said premises, and all costs of repairs to the interior of any of said buildings which may be necessary. It shall also include the compensation of some person, to be designated by the Party of the First Part or his representative, to keep the books and act as Cashier of said business; and to whom shall be paid all the receipts of said business, and such receipts shall be deposited in the name of such bookkeeper or cashier, and he shall attend to the payment of all expenses of said business, as herein designated.

" 'It is understood and agreed that at the termination of this lease, an accurate and correct statement shall be made of the business done on said premises, including receipts and profits, as well as expenses and of the balance remaining, after deduct-

ing said expenses of all kinds, enumerated, or not enumerated, which were necessary for the proper conduct of said business, the Party of the Second Part shall receive 20 per cent of said net profits.

" ' It is further agreed that the said Party of the First Part shall pay to the Party of the Second Part, at the expiration of this Lease or at its prior termination, the sum of One Thousand Dollars; and in consideration thereof, the said Party of the First Part shall have the right, at any time upon twenty-four hours notice to be given to the Party of the Second Part by the Party of the First Part, to at once terminate and completely annul this lease and all its provisions; and the Party of the First Part shall at once resume sole and exclusive possession of the demised premises.

" ' It is also agreed and understood, that the said Party of the Second part shall have absolute control and management of said business during the continuance of this Lease; and that the said Party of the First Part shall not in any wise be liable for the business done by the said Party of the Second Part, on the above mentioned premises, or for any debts or obligations which he may contract.

" ' It is further agreed, that in case said Lease is annulled as hereinbefore stated, the said Party of the Second Part by the execution of this Lease, expresses his consent to the transferring to the said Party of the First Part or any person whom he may designate, the license to be obtained from the Court of Common Pleas, conferring the privilege of selling liquor upon said premises.

" ' The Party of the Second Part shall not assign this Lease or sublet said premises or any part thereof, without the written consent of the Party of the First Part.

" ' In Witness Whereof, the Parties have hereunto set their hands and seals, and caused this instrument to be executed in duplicate, the Day and Year as above written.

" ' R. J. DOBBINS,

" ' R. P. DOBBINS, Atty.

" ' HUGH F. GRIFFIN.

" ' Signed, sealed and delivered
   in the presence of,
      " ' F. Y. SOLLY,
      " ' THOS. H. SMITH."

" ' Under the foregoing agreement the said Griffin conducted the Howland House in the summer of 1892.

" The plaintiffs sold and delivered a large quantity of merchandise to the Howland House during the months of June, July, and August, 1892, and there yet remains a balance unpaid of $1,777.71.

" If the court be of opinion that the estate of Richard J. Dobbins is liable to pay for said goods, etc., so sold and delivered, then judgment is to be entered for the plaintiffs, but if not, then judgment is to be entered for the defendants. The costs to follow the judgment, and either party reserving the right to sue out a writ of error therein."

The court entered judgment for plaintiffs on the case stated.

*Error assigned* was judgment as above.

*Pierce Archer, Elias P. Smithers* with him, for appellants.— The plaintiffs are limited to the facts set forth in the case stated, and if facts essential to recovery are omitted the presumption is that they do not exist: Klopp v. Ins. Co., 1 Woodward, 445; P. & R. v. Waterman, 54 Pa. 337.

The agreement for a share of net profits—eighty per centum it is to be remembered—was purely contingent to be paid only on the amount of net profits after deducting all expenses, including the fixed rental of $20,000. Does this possible contingent interest in net profits constitute a partnership? It is confidently submitted that it does not. A mere agreement (without receipt of profits) is not enough as to secret partners: Irwin v. Bidwell, 72 Pa. 244; Walker v. Tupper, 152 Pa. 1; Dunham v. Rogers, 1 P. & R. 255; Heckert v. Fegely, 6 W. & S. 139; Brown v. Jaquette, 94 Pa. 113; Edwards v. Tracy, 62 Pa. 374; Perrine v. Hankinson, 6 Halstead, 181; Seabury v. Bolles, 51 N. J. 103; Cox v. Hickman, 8 H. of L. 267; Wild v. Davenport, 48 N. J. Law Rep. 129; Dake v. Butler, 28 N. Y. 134; Parker v. Fergus, 43 Ill. 437; Holmes v. R. R., 5 Gray, Mass. 58; Thayer v. Augustine, 55 Mich. 187; Reed v. Murphy, 2 Greene, Iowa, 574; Bowyer v. Anderson, 2 Leigh., Va. 550; Felton v. Deall, 22 Vt. 170; Parsons on Part., 4th ed. sec. 71, p. 62; 3 Kent's Com., p. 33; Story on Part. sec. 43; 17 Am. & Eng. Ency. of Law, 849.

*Samuel M. Hyneman,* for appellees.—A careful reading of the agreement between Dobbins and Griffin will show that instead of its being a lease, as contended for by the appellants, that it is actually a partnership agreement with a lease of the Howland House to the partnership created by the agreement, the agreement containing many of the usual clauses and conditions of articles of copartnership, and few, if any, of the ordinary conditions of a lease: Irwin v. Bidwell, 72 Pa. 244; Lindley on Partnership, 25–40; Grace v. Smith, 2 Wm. Black. 998; Waugh v. Carver, 2 H. Black. 225; Hackett v. Stanley, 115 N. Y. 622; 3 Kent's Commentaries, 25; Walker v. Tupper, 152 Pa. 1; Brown v. Jacquette, 94 Pa. 113; Edwards v. Tracy, 62 Pa. 374; Sheridan v. Medera, 2 Stockton, 469; Voorhees v. Jones, 5 Dutcher (N. J.), 270; Wild v. Davenport, 48 N. J. L. Rep. 129; Perrine v. Hankinson, 6 Halstead, 181; Seabury v. Bolles, 51 N. J. L. R. 103; Parker v. Fergus, 43 Ill. 437; Holmes v. Old Colony R. R. Co., 5 Gray, 58; Thayer v. Augustine, 55 Mich. 187; Reed v. Murphy, 2 Green, Iowa, 574; Bryer v. Anderson, 2 Lehigh, 550; Felton v. Deale, 22 Vt. 170.

OPINION BY MR. JUSTICE FELL, July 18, 1895:

The question raised by the case stated is whether Richard J. Dobbins and Hugh F. Griffin were partners as to third parties in conducting the business of the Howland Hotel at Long Branch in 1892. Their relation is to be determined entirely by the agreement into which they entered, as no facts outside of it are stated. By the first three clauses of the agreement Dobbins leased the Howland Hotel together with all the personal property on the premises for three months to Griffin for $20,000, payable in four equal installments. Thus far the agreement is a lease, but at this point in form, substance and apparent intent the similitude ceases. The additional provisions inconsistent with the relation of lessor and lessee, which indicate a joint interest between the parties as owners of the business, are in their order as follows: (1) that Griffin shall give his undivided attention and devote his best energies to the promotion of the business to be done on the said premises; (2) that Dobbins or his representatives shall have the right of free access to the premises at all times; (3) that in addition to the sum of $20,000 Dobbins shall have 80 per cent of the net

profits derived from all of the business done on the premises;
(4) that in addition to the current expenses of the hotel and
the business done therein there shall be charged to the expense
account the cost of insurance, water and sewer rents, license
fee, interior repairs, and the salary of a person to be designated
by Dobbins who shall keep the books and act as cashier, receive
all money, deposit it in his own name, and make all payments;
(5) that at the termination of the agreement a statement shall
be made of the business done, and that Griffin shall receive
20 per cent of the net profits; (6) that at the expiration of
the lease Dobbins shall pay to Griffin $1,000, and that Dobbins
shall have the right at any time upon 24 hours' notice to annul
the agreement and assume sole and exclusive possession of the
property; (7) that Griffin shall have absolute control and man-
agement of the business during the continuance of the agree-
ment, and assents to a transfer of the license if the agreement
shall be annulled.

This agreement is called by the parties a lease, and it pro-
vides that Dobbins shall not be liable for the business done or
for the debts contracted by Griffin. In favor of construing it
as a lease it may be said that its unusual provisions are explained
by the unusual character and use of the property. Valuable
real estate and a large amount of personal property were being
used for a business that was precarious. The season was short
and the outcome uncertain, and dependent upon conditions
beyond the control of the lessee. To apportion the rent under
such circumstances so that a part should be fixed and certain
and a part conditional was a reasonable and not unusual busi-
ness arrangement, and the provisions were to ascertain and
secure the payment of the conditional rent.

This construction however makes a new agreement for the
parties. It assumes what they do not say, that the 80 per cent
of the net profits derived from the business is to be paid as
additional rent. The rent named is $20,000, and this amount
is twice named as the total rent. The 80 per cent of the net
profits is in addition to the rent. It cannot be considered a part
thereof without disregarding the words used and giving effect
to an undisclosed intention. The difficulties in the way of
considering the agreement a lease are insuperable. The lessor
is given a share of the profits, not a sum proportionate to a

share, and not as rent but directly as profits.   He has the right of access to the premises at all times and for all purposes; to appoint a bookkeeper and cashier who shall receive all moneys, make all payments and retain possession of the balance.   He has the right to an account, and is bound to pay his lessee $1,000, and can at his option with or without cause terminate the lease.   The lessee contracts for the exclusive control of his own business, and covenants to give it his entire time and attention; he is forbidden to keep his own books or to touch a dollar of his own money; he can neither receive nor pay any money derived from his business, and has no control of the net balance ; he gets nothing until the end, when after the statement of an account he is to receive 20 per cent; at the expiration of the term or its earlier termination at the will of the lessor he is to be paid by the lessor $1,000, and this in any event, whether there are profits or not.   These are not the characteristics of a lease, but of a partnership.

The business to be carried on is not spoken of as the business of Griffin, except in the single instance where it is provided that " the party of the first part shall not in any wise be liable for the business done by the party of the second part."   In all other parts of the agreement it is spoken of or referred to as " the business done on the premises."   It is to " the business done on the premises " that Griffin is to give his whole attention, of it that the bookkeeper is to take charge, an account to be stated and the net profits ascertained, and from it that he is to be paid and the parties to receive the one 80 per cent and the other 20 per cent.   The business of which the agreement speaks and of which an account is to be kept, a statement made and the profits divided, is the business of a distinct entity, a partnership, in which the parties ' are joint owners and in which they share as proprietors.   This seems to be the only fair conclusion to be drawn from the acts of the parties.

The agreement is our only guide.   If it is evidence of the intention of the parties to become joint owners of the business to be carried on we need not consider whether they became partners against their will by operation of law.   We are not concerned with the question whether the law of the state by which the contract as governed is in harmony with the old English rule of Grace v. Smith, 2 Wm. Blackstone, 998, and Waugh v. Carver,

488    MERRALL et al. v. DOBBINS et al., Appellants.

2 II. Blackstone, 235, which makes participation in the profits conclusive of the liability of the participant to creditors without regard to the agreement or intention of the parties, or with the modern rule of Cox v. Hickman, 8 H. L. C. 268, under which a participation in profits is held to be strong but not conclusive evidence of a partnership, and the whole transaction is taken into consideration in order to determine whether the relation of partners was to be created. If there was a partnership resulting from intention, all other questions drop out of the case.

The judgment is affirmed.