## AUSTIN, NICHOLS & COMPANY v. WILLIAM NEIL AND M. ELIZABETH LUCAS.

Submitted July 12, 1898—Decided November 7, 1898.

The lease of a hotel provided that the lessee should pay to the lessor, as rent for the demised premises, a designated proportion of the receipts taken by the lessee at the hotel during the term, after paying current running expenses of the hotel, and also contained several provisions, the apparent object of which was to secure to the lessor the rent contemplated. *Held,* that this instrument did not, *proprio vigore,* create between the lessor and lessee the relation of partnership in the business of the hotel, either *inter sese* or as to creditors of the business.

The case certified by the Monmouth Circuit is as follows:

The plaintiffs, wholesale grocers in New York City, sold goods on credit to the defendant William Neil, for use at the Beach House, a summer hotel at Sea Girt, New Jersey. Said Neil's interest in that hotel was under an agreement with the other defendant, a copy whereof is hereto annexed, of which agreement the plaintiffs had no knowledge.

The foregoing case is stated as one of doubt and difficulty, and certified to be argued at the bar of the Supreme Court for its advisory opinion whether or not the plaintiffs can recover against both defendants.

GILBERT COLLINS,
*Judge.*

Dated January 24th, 1898.

## SCHEDULE NO. 1.

Whereas, M. Elizabeth Lucas and L. U. Maltby are tenants in common of certain premises known as the Beach House, situate at Sea Girt, New Jersey; and whereas, there is a dispute between the said M. Elizabeth Lucas and the said L. U. Maltby in regard to the division of the said property and other properties formerly belonging to the late firm of L. U. Maltby & Company; and whereas, it is greatly to the disadvantage of both the said parties, tenants in common, that the said premises should remain vacant and not produce any income; and whereas, William Neil, hereinafter named as a party hereto, has offered to lease the said Beach House and its appurtenances, and notice of this offer has been given by the said M. Elizabeth Lucas to the said L. U. Maltby, requesting him to join in the execution of said lease, and the said L. U. Maltby has neglected to reply or to acknowledge the said notice; and whereas, the said M. Elizabeth Lucas is advised by counsel that she may, under the circumstances, execute a lease for the said Beach House and account for the incomes therefrom,

Now this agreement witnesseth—

*First.* That the said M. Elizabeth Lucas, tenant in common as aforesaid, does hereby let unto William Neil, of the city of Philadelphia, for the term of four months from the 1st day of June, A. D. 1895, the said premises known as the Beach House, situate at Sea Girt, New Jersey, consisting of a hotel fully furnished, together with the furniture, silver, glass, cooking utensils and appointments therein contained, bath-houses and their appointments, all of which things are more specifically described and referred to in an inventory thereof hereto attached, for the consideration hereinafter stated.

*Second.* The said William Neil agrees to pay as rent for the said above-described premises, all the receipts taken by him at the said hotel during the whole of the term of the said lease, except so much as shall be necessary to pay the

current running expenses of the said hotel during the said period, in the following manner: All bills incurred are to be paid first. When all bills are paid, or the money to pay them secured, then the said William Neil shall be entitled to retain one thousand dollars ($1,000). M. Elizabeth Lucas shall then be paid thirty-five hundred dollars ($3,500) should the income be sufficient to do so, and any surplus income after these three payments are made shall be divided, William Neil receiving one-third of said surplus income, and M. Elizabeth Lucas two-thirds; and it is expressly agreed and understood that the said M. Elizabeth Lucas has no share or part in the operation of the said hotel (except as hereinafter provided for), and is not responsible for any debts or obligations of the said hotel, or of the said William Neil in the conduct thereof.

*Third.* The said M. Elizabeth Lucas shall be consulted in the employment and discharge of servants, and the wages to be paid to them. She shall have the right and privilege of placing in the office of the hotel a representative acting for her and in her behalf, who shall act as cashier, keep the books and accounts, and employ the bartender, take charge of the bar receipts, and keep a record of the purchases, sales and profits of the bar. One male room clerk only is to be employed in the office and no night clerk. No one is to be entertained at the expense of the house, without the consent of M. Elizabeth Lucas. The price for rooms and board to be fixed jointly by M. Elizabeth Lucas and William Neil, and to be plainly placed on a diagram of the rooms of the hotel, and strictly adhered to, unless after consultation between M. Elizabeth Lucas and William Neil, the former gives her consent to a change in prices. M. Elizabeth Lucas, her family and maids, William Neil's family and maid, to have the freedom of the hotel. All moneys received as income as aforesaid, which shall be deposited in any bank account, shall be deposited in an account in the joint names of the said William Neil and the said representative of the said M. Elizabeth Lucas, and all checks drawn upon said account shall be signed by the said William Neil and the said representative. No expenditures

of the said income shall be made by the said William Neil for additions to the said hotel, furniture, appliances and appurtenances, unless and upon the direct written approval and consent of the said M. Elizabeth Lucas, it being understood and agreed that expenditures from the income of the hotel shall be made only for the current running expenses.

*Fourth.* The said William Neil, lessee, will keep the premises in the same good condition, order and repair, reasonable wear and tear and damages by accidental fire excepted, and the said William Neil hereby covenants to save and protect the said M. Elizabeth Lucas from all claim, demand or liability growing out of the said hotel or premises during said period.

In witness whereof the said parties hereto have set their hands and seals, this the twelfth day of April, A. D. 1895.

M. ELIZABETH LUCAS. [L. S.]
WILLIAM NEIL. [L. S.]

Sealed and delivered in presence of

ALEX. W. NUTT.

Before MAGIE, CHIEF JUSTICE, and Justices DIXON, LUDLOW and COLLINS.

For the plaintiffs, *Parker & Pearce.*

For the defendant Lucas, *Frank P. McDermott.*

The opinion of the court was delivered by

DIXON, J. As the certificate from the Circuit Court does not show that Mrs. Lucas actually engaged in the business of carrying on the hotel or held herself out as a partner, the sole question is whether the contract set forth in the certificate, *proprio vigore,* created the relation of partnership between her and Mr. Neil, who alone purchased goods from the plaintiffs.

The contract was in terms a lease, by which Mrs. Lucas

let to Neil the hotel, furniture and appointments for the period of four months from June 1st, 1895, at a rent of indefinite amount, to be paid by Neil out of the receipts taken by him at the hotel, after paying the current running expenses, which rent was to comprise a certain proportion of those surplus receipts.

If this case were to be decided on the doctrine announced in *Sheridan* v. *Medara*, 2 *Stock*. 469, that participation in the profits of a business constitutes a partnership as to third persons, even though such participation is based on a transaction which would not of itself create a partnership (*e. g.*, a loan of money), we would be constrained to hold Mrs. Lucas as a partner. But in the later case of *Wild* v. *Davenport*, 19 *Vroom* 129, the Court of Errors discredited this doctrine and decided that where a partnership contract provided that on the death of one of the partners his share of the capital should remain in the business, there, although' his executors would be entitled to a share of the profits earned after the testator's death, they were not thereby made partners and as such chargeable with debts. In delivering the opinion of the court Mr. Justice Depue said : " Nor is it every contract for a share of the profits of a business that will create a partnership either *inter sese* or as to creditors. * * * To subject a person not ostensibly a partner to liability for partnership debts, there must be some contract to which he is a party with respect to a communion of profits, which gives him control as principal over the conduct of the business, or creates, as between him and the ostensible partner, the relation of principal and agent. * * * A person not actually engaged in the business as a principal and not holding himself out as a partner, cannot be held for debts contracted in the business as a dormant partner, unless in virtue of some contract, express or implied, on his part, in legal effect creating, as between him and the persons actually carrying on the business, the relation of principal and agent."

We must therefore examine the other provisions of this contract to see whether, by their fair import, they create be-

tween Mrs. Lucas and Neil this mutual relation of principal and agent in the conduct of the business.

The general declaration of the contract is: "It is hereby expressly agreed and understood that the said M. Elizabeth Lucas has no share or part in the operation of the hotel (except as hereinafter provided for), and is not responsible for any debts or obligations of the said hotel or of the said William Neil in the conduct thereof."

Evidently, unless the exceptions referred to have a contrary effect, this clause precludes the idea of mutual agency.

The excepted provisions are that Mrs. Lucas is to be *consulted* in the employment and discharge and the wages of servants; that she may select a cashier, who is to keep the books, employ the bartender, take charge of the bar receipts, and jointly with Neil control the bank account, and that she, jointly with Neil, shall fix the price for rooms and board.

Regarding these provisions in conjunction with the leading feature of the contract as a lease at a rent payable out of and dependent upon the surplus receipts of the hotel, their design seems to be to secure for Mrs. Lucas an adequate rent for the demised property. None of them displays a purpose that, in carrying them out, either of these persons shall act as the agent of the other; each is to act for self alone. The most important power given to Mrs. Lucas, that of selecting the cashier, somewhat resembles but is not so large as that exercised by certain creditors in *Brundred* v. *Muzzy*, 1 *Dutcher* 268; on error, *Id.* 674, where the creditors, by virtue of a contract with their debtors, designated a person who, in their behalf, took charge, jointly with the debtors, of the business of the debtors, in order to obtain from the business payment of the debt; yet this court and the Court of Errors held that those creditors were not thereby made partners of the debtors in the business thus jointly conducted. In view of that decision, this right of Mrs. Lucas to appoint a representative to protect her interest as lessor should not be deemed to change her *status* from that of lessor to that of partner with Neil,

either *inter sese* or as to creditors who have no other basis for their claim against her than the contract itself.

The contract before us is very like that in *Holmes* v. *Old Colony Railroad Co.*, 5 *Gray* 58, where the railroad company had leased a hotel and furniture to Parker and Tribon at the yearly rent of $500 for the use of the furniture "and one-half the net proceeds arising from keeping the said house as a hotel," with certain stipulations designed to insure to the company its share of the proceeds; the company also agreed to furnish free passage over its railroad for the lessees and their employes in carrying on the house and for all articles for the use of the house. In an action against Parker, Tribon and the railroad company to recover for supplies furnished by the plaintiffs to the hotel, the court said: "It is no longer true that receiving one-half the profits, or one-half the net profits, arising from articles manufactured and sold, or resulting from business in which one furnishes the stock in trade and another performs the labor, necessarily creates a partnership. It is always competent to look at the particular circumstances of the case, and ascertain thereby whether it may not be merely a compensation to a party for his labor and services, or for furnishing the raw materials, or a mill privilege, or a factory, from which the other is to earn profits." On the construction of the lease, the court held that the railroad company was not a partner in the business of the hotel and was not responsible to creditors of that business.

So, in the present case, we think the object of this written instrument, viewed in its entirety, was not to make Mrs. Lucas and Mr. Neil partners in carrying on the business of the hotel, not to make Mrs. Lucas a principal or Mr. Neil an agent in that business, but to create between those persons the relation of lessor and lessee, and to secure to Mrs. Lucas her stipulated share of the net receipts of the business which Mr. Neil was to carry on in the hotel, not as profits due to a partner, but as rent due to a lessor.

Our advice to the Circuit Court, therefore, is that the plaintiffs cannot recover against Mrs. Lucas.