## KURZROK v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. July 28, 1924.)

No. 6459.

**1. United States ⬅123—Evidence held to sustain findings of knowledge and intent in presenting false claims.**

On trial of internal revenue agent for presenting false accounts of his expenses, evidence *held* to sustain jury findings that he knew they were false and intended to defraud the United States.

**2. Criminal law ⬅438—Photostat copies of department records held admissible in evidence.**

Photostat copies of accounts presented by an internal revenue agent, which after payment were filed and made a part of the records of the department, *held* admissible in evidence, under Rev. St. § 882 (Comp. St. § 1494), and Act June 10, 1921, § 306 (Comp. St. Ann. Supp. 1923, § 400⅝d).

**3. United States ⬅121—Presenting false expense account for approval by internal revenue agent held "presenting false claim against government."**

Where an internal revenue agent was temporarily assigned for duty in a division other than that to which he was permanently attached, his presentation to the head of such division of his monthly accounts, containing false statements of expenses, for approval as to the service rendered which was required before audit and payment of his accounts by the head of his own division, *held* the presenting of a false claim against the government, within Criminal Code, § 35, as amended by Act Oct. 23, 1918 (Comp. St. Ann. Supp. 1919, § 10,199).

In Error to the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

1 F. (2d)—14

Criminal prosecution by the United States against Michael Kurzrok. Judgment of conviction, and defendant brings error. Affirmed.

Charles B. Selby, of Oklahoma City, Okl. (George M. Callihan, of Oklahoma City, Okl., on the brief), for plaintiff in error.

W. A. Maurer, U. S. Atty., and Roy St. Lewis, Asst. U. S. Atty., both of Oklahoma City, Okl.

Before SANBORN and LEWIS, Circuit Judges, and SCOTT, District Judge.

LEWIS, Circuit Judge. Plaintiff in error was convicted on the second and third counts of an indictment, each charging a violation of that part of Section 35 of the Criminal Code (amended October 23, 1918, 40 Stat. 1015; Comp. St. Ann. Supp. 1919, § 10199) reading thus:

"Whoever shall make or cause to be made or present or cause to be presented, for payment or approval, to or by any person or officer in the civil, military, or naval service of the United States, * * * any claim upon or against the Government of the United States, * * * knowing such claim to be false, fictitious, or fraudulent;" shall be fined, etc.

The second count charged that Kurzrok was an Internal Revenue Agent; that about December 31, 1920, he willfully and fraudulently made and presented to G. C. Holt, an officer in the civil service of the United States, for his approval, a certain false, fictitious and fraudulent account and claim against the United States, with intent of cheating and defrauding the United States; that said claim consisted of a statement in detail of expenses actually incurred by Kurzrok for each day from December 1, 1920, to December 29, 1920, inclusive, at the Midland Hotel of Lawton, Oklahoma, wherein Kurzrok charged against the United States as items of expense, 75¢ for breakfast, $1.00 for dinner and $1.50 for supper, when in truth and in fact he only expended for said meals at said hotel during said days 75¢ for breakfast, 75¢ for dinner and $1.00 for supper. The third count is like the second, except it charges that the statement made and presented by Kurzrok to Holt for his approval was for expenses actually incurred by him at the Park Hotel at Newkirk, Okla., during the first eight days of January, 1921, wherein he charged against the United States as items of expense, 75¢ for breakfast, $1.25 for dinner, $1.25 for supper and $1.50 for lodging for

each of said days at said hotel, when in truth and in fact he only expended for breakfast, dinner, supper and lodging on each of said days at said hotel $3.25.

[1] The part of the section defining the crime here charged remains substantially as it was in the original Act (12 Stat. 696); the statute plainly condemns the first step that may be taken in an attempt to obtain from the United States money by means of a fraudulent claim, and declares it to be a criminal act. Bridgeman v. United States, 140 Fed. 577, 72 C. C. A. 145. "It is directed generally against whoever presents a false claim against the United States, knowing it to be such, to any officer of the civil, military or naval service." United States v. Bowman, 260 U. S. 94, 101, 43 Sup. Ct. 39, 42 (67 L. Ed. 149). Kurzrok became Internal Revenue Agent in 1919. He was a tax specialist and expert accountant, and rendered services in checking over income tax returns. After rendering services of that kind while stationed at Washington, D. C., Providence, R. I., and Poughkeepsie, N. Y., he was assigned temporarily to the Oklahoma Division in November, 1920. He arrived in Oklahoma City about November 15, and reported to G. C. Holt, Internal Revenue Agent in charge of the Oklahoma Division, who gave him directions in the discharge of his duties. Mr. Holt sent him to different points in Oklahoma to check up returns. He was engaged in such services at Lawton, Okla., in December, from the first to the 29th day of that month. Mr. Holt then sent him to Newkirk, Okla., where he was engaged during the first eight days of January, 1921. At the end of each calendar month he made out a list of his daily expenses incurred during the month on a prescribed form with which he was familiar. These statements disclosed, and the evidence established, that while Kurzrok was at Lawton he stopped at the Midland Hotel, and while at Newkirk at the Park Hotel. It was further established by the testimony, in fact admitted by Kurzrok when testifying as a witness, that his statements of his expenses at each hotel, which he submitted to Holt for his approval, were false statements in the respects charged in each count, that the amount which he paid to the Midland Hotel each day for breakfast, dinner and supper was $2.50, whereas he had charged against the United States $3.25 each day for the three meals, that the amount which he paid during each of the eight days in January to the Park Hotel

at Newkirk for meals and lodging was $3.25, whereas he had charged in his account $4.75 for each day. Kurzrok verified under oath his statements of expense account as just and true in all respects, and then presented them to G. C. Holt, and Holt, as Internal Revenue Agent in charge of the Oklahoma Division, put his written approvals thereon "as to service." They were then forwarded to the division to which he was permanently attached, Kurzrok received payment, and the amounts were charged to the United States. G. C. Holt testified that he was Internal Revenue Agent in charge, Oklahoma Division, that he had jurisdiction over all revenue agents and investigators working in Oklahoma and Arkansas, and directed their activities and approved their reports, that Kurzrok was assigned to his division temporarily and was under his charge from some time in November, 1920, to the last of March, 1921, that he approved Kurzrok's accounts for December, 1920, and January, 1921, that Kurzrok had to look to the division to which he was permanently attached for payment of his accounts and that Holt's approval meant that Kurzrok had performed the month's service in the Oklahoma Division, and that before Kurzrok could receive pay it was necessary that Holt's approval as to service rendered be endorsed on the claim, that a check would not be drawn on the Treasury of the United States by the division to which Kurzrok was permanently attached without Holt's approval. The account for each month covering Kurzrok's salary and his daily expenses followed this course. They were made out by Kurzrok, submitted to Holt for his approval that the service had been rendered, were then sent on to the division to which he was permanently attached, and Kurzrok then received checks in payment on the Treasury. The accounts in each instance were admittedly false, just as it was charged in the indictment; but Kurzrok's defense was that the falsity was not made for a fraudulent purpose, that he had no intention of cheating or defrauding the United States. He moved for a directed verdict in his favor, which being denied, he urges the same defense here.

It appears from the rules and regulations put out by the Treasury Department, with which Kurzrok was fully familiar, that he and all Internal Revenue Agents were limited in their daily expenses to be charged against the United States to a maximum of $5.00, and so limited, he could only charge for expenses actually incurred. The items

to be included covered meals, lodging, laundry, pressing of clothes, and tips not exceeding 45¢ per day in States where tipping was not prohibited. With full knowledge of these restrictions Kurzrok undertook to sustain his defense in this way: He testified that although not required to do so, he worked every night in his room on tax returns and preparation of reports during the time in question until eleven, twelve or one o'clock, and on ceasing work he would go down to some restaurant on the street and get a lunch, and that the cost of these lunches each night, which did not appear in his accounts rendered while at Lawton and at Newkirk, together with tips, limited to 45¢ per day by the rules, which did not appear in his Lawton account but did appear in his Newkirk account, were sufficient in amount to make up the excess which he did charge for the three meals each day while at Lawton and the excess which he did charge for the three meals and lodging each day while at Newkirk. But there was other testimony that likely caused the jury to doubt the truthfulness of the defendant's explanation and to give to his testimony little weight. Among other vouchers which accompanied his statement of expenses while stopping at the Midland Hotel in Lawton was one for $22.50, receipted for by one Williams. The proprietor of that hotel testified that there was no one by that name in his employ at that time. Kurzrok, when cross-examined about that voucher, admitted that the voucher was in his handwriting. This he undertook to explain by stating that he always kept copies of vouchers, and that probably by mistake he attached the copy to his account instead of the original. But that explanation did not account for the fact that Williams was apparently a fictitious person. L. R. Glover was the proprietor of the Park Hotel at Newkirk. Another voucher was for one night room rent, $2.00, at that hotel, signed F. A. Glover, per W. M. Mr. Glover testified that he did not sign that voucher. He further testified that the uniform rate at his hotel for lodging was $1.50. From these and other facts and circumstances it cannot be doubted that there was sufficient evidence as to each count to sustain a finding by the jury that at the time Kurzrok presented each of the claims to G. C. Holt for his approval he knew them to be false, fictitious and fraudulent and that he intended to defraud the United States; and hence the court did not err in refusing to instruct verdicts of not guilty.

[2] It is assigned as error that the court, over the objection of the defendant, admitted in evidence photostat copies of the accounts made up by Kurzrok for his expenses at the Midland and Park hotels, and the exhibits thereto attached. But those documents, after payment, appear to have been lodged with the Department at Washington, and the photostat copies were certified in accordance with Section 882, Rev. Stats. (Comp. St. § 1494), and Section 306, Act June 10, 1921, 42 Stat. 24 (Comp. St. Ann. Supp. 1923, § 400⅝c).

[3] It is also assigned as error that the court permitted the witness Holt, over objection, to testify that he had authority to approve Kurzrok's accounts as to services rendered. The witness further said that the authority was conferred upon him by commission issued by the Commissioner of Internal Revenue, approved by the Secretary of the Treasury. We think these statements might have been omitted; they were not necessary to make out the Government's case and they were not prejudicial. The witness had already testified that Kurzrok was temporarily assigned to the division of which he had charge, and that he directed the activities of all agents within the division and approved their reports, and that Kurzrok was under his charge from the latter part of November, 1920, to the last of March, 1921, that Kurzrok reported to him when he reached Oklahoma City, that thereafter he directed him to what places to go within the division and what work he should do, and that Kurzrok's accounts would not have been paid, no check could be drawn on the Treasury therefor, until he approved his account to the extent of certifying that he had rendered the services. Kurzrok's reports stated the services in which he had been engaged and at what point, and when he made up those accounts he presented them to Holt for his approval. Holt's approval was endorsed on the accounts presented to him and Kurzrok knew this was necessary before his accounts would be paid. These facts, we think, clearly brought the case within the requirements of Section 35, and express authority in Holt need not be shown.

There were no exceptions to the court's charge, but defendant's counsel requested that the court instruct the jury in substance that, if G. C. Holt only had authority to approve the accounts of Kurzrok as to services rendered, and that the Internal Revenue Agent in charge of the New Haven Division was alone authorized to approve, allow

and pay the claims, then the jury should acquit the defendant. This request was not the law, and the court did not err in refusing to give it. The agent in charge of the New Haven Division had no personal knowledge whether Kurzrok had discharged any services in the Oklahoma Division to which he had been temporarily assigned. Necessarily, he had to accept certification of the agent of that division on that subject, and that was the purpose of requiring a certification by Holt. The instructions given by the court covered the issues in the case. We find no prejudicial error during the progress of the trial, and the judgments on the two counts are

Affirmed.