**UNITED STATES ex rel. KESSLER et al.**
**v. MERCUR CORPORATION et al.**
No. 225.

Circuit Court of Appeals, Second Circuit.
April 13, 1936.

Marshall McLean, of New York City (James L. Nesbitt and Sarah H. McLean, both of New York City, of counsel), for appellants.

Clark, Carr & Ellis, of New York City (Clarence J. Shearn and Paul A. Crouch,

both of New York City, of counsel), for appellees.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is an appeal by the plaintiffs from a judgment for the defendants entered after a motion by the defendants for judgment on the pleadings under rule 112 of the Rules of Civil Practice of the State of New York.

On November 30, 1926, the United States entered into an agreement of lease with the defendant Mercur Corporation covering premises in Newark, N. J., belonging to the government and known as "Port Newark Army Supply Base." The lease was for a period of ten years, revocable, however, at the will of the Secretary of War or by the lessee upon three months notice in writing. It was executed on behalf of the United States by the Assistant Secretary of War and purported to be authorized under the Act of July 11, 1919 (41 Stat. 129).

It provided that the lessee should operate and use the property for "terminal storage warehouse and/or manufacturing purposes," with the right to sublet such portions of it as the lessee saw fit, charge against the gross revenues collected all operating expenses including depreciation of equipment, expend 95 per cent. of the balance in making repairs, betterments, and renewals under the supervision and approval of the Quartermaster General, and retain the remaining 5 per cent. "as the property of the lessee." It also provided that the lessee should maintain an accurate accounting system of all expenses incurred and revenue derived from the maintenance and operation of the property and render a monthly report thereof to the United States. It also reserved to the United States the right to continue to store certain "German War Relics" on the premises until they could be removed and required the lessee to furnish a bond of $10,000 for the faithful performance of the "lease." On January 20, 1927, the parties entered into a "First Supplemental Agreement" to the lease, which recited that the lessee was negotiating for the storage of a large amount of sugar on the premises, that the aggregate receipts from this sugar in 2½ years would amount to $1,000,000, and that an expenditure of $200,000 for betterments,

repairs, or renewals would be required in order to provide suitable storage facilities. It was accordingly agreed that the lessee should so expend $200,000, and that if it should supply that sum and should not be disturbed in the use of storage facilities until it had received storage charges in the amount of $400,000, it should be permitted to retain 10 per cent., instead of 5 per cent., from the first $400,000 received for the storage of sugar, and the $200,000 expended in providing the necessary facilities should be deducted from the remainder of the $400,000. The lessor agreed not to revoke the lease prior to September 1, 1929, provided the $200,000 was expended in betterments. A "Second Supplemental Agreement" made on May 21, 1927, provided for an additional advance of $150,000 by the lessee for repairs with a similar 10 per cent. payment upon the first $700,000 received from the storage of sugar. A "Third Supplemental Agreement" on May 27, 1927, provided for an additional advance of $100,000 by the lessee for repairs with a like 10 per cent. payment upon the first $900,000 received from the storage of sugar. A "Fourth Supplemental Agreement" under date of March 8th, 1928, modified the existing agreements by a provision for the recognition of the rights of sublessees and by a provision that the Mercur Corporation might apply 50 per cent. of the net profits towards reimbursing itself for the cost of betterments and renewals made upon the space used for the storage of sugar. A "Fifth Supplemental Agreement" under date of December 30, 1930, provided that the lease should not be revoked by the United States prior to August 31, 1936, and that there should be a right of occupancy under the subleases up to that date and finally that the net profits should be disposed of as follows: "Ninety per cent (90%) shall be expended in making, under the general supervision and with the approval of the Quartermaster General, * * * repairs and renewals to and upon said property * * * or shall be otherwise disposed of as the Quartermaster General may direct; ten per cent (10%) shall be the property of the lessee."

Under each of the foregoing supplemental agreements, as well as under the original lease, the United States was not to be liable for any losses sustained or obligations incurred by the lessee in connection with the operation of the premises or the repairs or betterments.

The complainant brought this action under section 3490 of the Revised Statutes (31 U.S.C.A. § 231). That section provides that a person "who shall do or commit any of the acts prohibited by any of the provisions of section fifty-four hundred and thirty eight, Title 'Crimes' [section 80 of Title 18], shall forfeit and pay to the United States the sum of $2,000, and, in addition, double the amount of damages which the United States may have sustained by reason of the doing or committing of such act, together with the costs of suit; and such forfeiture and damages shall be sued for in the same suit."

Revised Statutes, § 5438, which was incorporated by reference in section 3490, provides, among other things, as follows: "Every person who makes * * * or presents * * * any claim upon or against the Government * * * knowing such claim to be false * * * or who, for the purpose of obtaining * * * the payment or approval of such claim, makes * * * any false * * * account * * * knowing the same to contain any fraudulent or fictitious statement or entry, or who enters into any agreement, combination, or conspiracy to defraud the Government * * * by obtaining or aiding to obtain the payment or allowance of any false or fraudulent claim," shall be subjected to a specified fine or imprisonment.

■ While section 5438 was amended, repealed, and finally since the time when it was referred to in section 3490 superseded by a broader enactment (18 U.S.C.A. § 80), it stands, so far as section 3490 is concerned, as it was written when incorporated by reference. It is quite immaterial that the superseding act alone appears in the United States Code, for the Code only embodies a prima facie statement of the statutory law. It is well settled that where a statute incorporates another, and the one incorporated is thereafter amended or repealed, the scope of the incorporating statute remains intact and "no subsequent legislation has ever been supposed to affect it." Kendall v. United States, 12 Pet. 524, 625, 9 L.Ed. 1181; In re Heath, 144 U.S. 92, 93, 94, 12 S.Ct. 615, 36 L.Ed. 358.

Section 3491 of the Revised Statutes (31 U.S.C.A. § 232) provides that a suit to recover the forfeiture and double the amount of damages which the United States may have sustained may be brought and carried on by any person as well for himself as for the United States; and section 3493 (31 U.S.C.A. § 234) provides that the person bringing such suit and prosecuting it to final judgment shall be entitled to receive one-half the amount of the forfeiture as well as one half the amount of the damages, the other half to belong to the United States.

By virtue of section 3490 (incorporating section 5438) and sections 3491 and 3493, this suit was brought. The amended complaint contains four causes of action, and includes the lease and supplemental agreements as exhibits.

The first cause of action sets forth the lease of Port Newark Base by the United States to Mercur Corporation, and the execution of the various supplementary agreements and alleges that the Mercur Corporation was required to spend 90 per cent. of the net revenues in the maintenance of the premises and was required to submit accounts of revenues and expenses, that it made up its accounts "to show and establish a right * * * to apply to its own use, and made deductions from gross revenues, of certain sums received on account of storage of large quantities of sugar * * * which sums said defendant * * * was not entitled to claim or deduct under the terms of the said lease and agreement and supplements thereto from the said gross revenues and said accounts and reports asserted a right, as against the government of the United States, to the sums thus claimed and deducted. * * * and the said accounts and reports were false and untrue and were submitted for the purpose of establishing a right to said sums so claimed and deducted as against the Government of the United States, and were submitted for its approval. That the sums so falsely, improperly and illegally applied, deducted and claimed as against the Government * * *, and as proved, amounted to $458,446.94."

It further alleged that the ownership over the gross revenues as received "was vested in the United States * * * by the terms of the agreement and the supplements thereto, and the practice and procedure of the parties thereunder, and no part thereof became the property of defendant Mercur Corporation until presentation and allowance of its monthly accountings." It claimed the right to recover the penalty of $2,000 and double the amount of $456,446.-94.

The second cause of action alleges that the first, second, and third supplemental leases provided for the advancing of $450,-

000 for improvements and that in lieu of interest thereon Mercur Corporation should receive 10 per cent., rather than 5 per cent., of net revenues, as provided in the original lease, and says that notwithstanding this the defendant unlawfully, knowingly, and falsely included $75,000 interest on said sums of money in the expense of operating the property under the item "other expenses" in order to cover up a duplication of the charge of interest and thus defraud the United States. The recovery sought on this count was a penalty of $2,000 and double the amount of $75,000.

The fourth cause of action alleges that the Mercur Corporation reimbursed its affiliate F. Jarka Company for $5,805.43 stevedoring expenses which the F. Jarka Company should have borne itself and improperly charged them as an item of operating expense with the intent to defraud the United States. It seeks a recovery of a penalty of $2,000 and double the amount of $5,805.43.

Judge Patterson, who had the case in the court below, held that section 5438 as incorporated by section 3490 denounces only persons who make false claims against the government that are based upon its own liability to such claimants. He found that this was not done in the present case because the receipts of the lessee from the warehouse business were its own property and not government funds. He accordingly dismissed the amended complaint and directed a judgment for the defendants from which this appeal has been taken.

The question before us is whether the amended complaint and the lease and agreements which it incorporates show that the defendants, or any of them, were guilty of presenting a false claim against the United States for the purpose of obtaining payment or approval thereof.

██ In order to bring a case within the statute we have referred to, it is necessary to show that a claim is presented against the United States, or in rem against its property. This interpretation of the statute is so entirely settled as to be beyond any question. In United States v. Cohn, 270 U. S. 339, 46 S.Ct. 251, 70 L.Ed. 616, a consignee of nondutiable imported cigars obtained possession of them by representing to the collector of customs that he had lost the bill of lading, whereas he never had had the bill of lading at all and could only have obtained it by taking up a draft which accompanied it and was in the hands of a bank. The Supreme Court held that the fraudulent claim was not covered by the Statute. Sanford, J., said (270 U.S. 339, at page 345, 46 S.Ct. 251, 253, 70 L.Ed. 616) that: "The provision relating to the payment or approval of a 'claim upon or against' the Government relates solely to the payment or approval of a claim for money or property to which a right is asserted against the Government, based upon the Government's own liability to the claimant. And obviously it does not include an application for the entry and delivery of non-dutiable merchandise, as to which no claim is asserted against the Government, to which the Government makes no claim, and which is merely in the temporary possession of an agent of the Government for delivery to the person who may be entitled to its possession."

In Olson v. Mellon (D.C.) 4 F.Supp. 947, affirmed U. S. ex rel. Knight v. Mellon, 71 F.(2d) 1021 (C.C.A.3), a qui tam action was instituted by an informer. The false claim there relied on consisted of matters suppressed by the defendant in his income tax return, the disclosure of which would have made the tax larger than that reported. The court held the situation outside of the statute because the claim affected was one of the government against the defendant, and not one of the taxpayer against the government. See United States ex rel. Boyd v. McMurtry (D.C.) 5 F.Supp. 515; the dictum in Capone v. United States (C.C.A.) 51 F.(2d) 609, 614, 76 A.L.R. 1534, and the decision in United States v. Byron (D.C.) 223 F. 798, to the same effect.

In Kurzrok v. United States, 1 F.(2d) 209 (C.C.A.8), where an Internal Revenue agent presented a false claim for payment, the case was properly held to fall within the statute. There the claim asserted was of the agent against the government. In Bridgeman v. United States, 140 F. 577 (C.C.A.9), a false voucher presented by an Indian agent for payment was properly held within section 5438 because it served as a basis for approval of payment from treasury funds in the agent's hands. See, to the same effect, United States v. Downey, 257 F. 366 (D.C.R.I.), and Dimmick v. United States, 116 F. 825 (C.C.A. 9).

It seems clear from the foregoing that the statute can only apply to the present case if the United States had a property interest in the moneys derived by Mercur

Corporation from the operation and use of the land and buildings at the Port Newark Army Supply Base. The appellants insist that because under the terms of the agreement the Quartermaster General had some supervision over the expenditures and because at first 95 per cent., and later 90 per cent., of the net receipts was to be paid out in repairing or improving the property of the United States, the latter became joint adventurer in the enterprise and as such had a proprietary interest in the avails. That does not follow. Percentage leases like the one here are not uncommon, and if the present one is unusual it can only be thought so because such a large proportion of the receipts from the warehouse business was to be spent on the lessors' property instead of being paid directly to it. In Austin, Nichols & Co. v. Neil, 62 N.J. Law, 462, 41 A. 834; Holmes v. Old Colony Railroad Corporation, 5 Gray (Mass.) 58, and Heimstreet v. Howland, 5 Denio (N.Y.) 68, percentages of receipts of a business were reserved as rent under agreements, but it was held that no relation of partners or joint adventurers existed between the parties. In Gottlieb Bros. v. Culbertson's, 152 Wash. 205, 277 P. 447, the defendant leased space in a store to a tenant who agreed to pay 15 per cent. of his gross receipts to the owner as rent. The agreement was held to create only the relation of landlord and tenant and not that of partner or coadventurer. See, to the same effect, Ault Woodenware Co. v. Baker, 26 Ind.App. 374, 58 N.E. 265, and Fiske v. Framingham Manufacturing Company, 14 Pick. (Mass.) 491.

The plaintiffs chiefly rely on Merrall v. Dobbins, 169 Pa. 480, 32 A. 578; Reynolds v. McMurray, 60 F.(2d) 843, 844 (C.C.A. 10), and New Yorkers' Producing Corp. v. Moss, 237 App.Div. 567, 262 N.Y.S. 113. The first decision involved the lease of a hotel for a rental of $20,000 and 80 per cent. of the net profits. The lessor was empowered to appoint a cashier to receive the money and keep the accounts. Such an arrangement gave the lessor a control over the earnings from the enterprise that justified the court in holding that there was a joint enterprise in spite of the use in the contract of the descriptive word "lease." The second decision related to the development of oil wells under an agreement whereby the owner was to get his "proportionate part of the oil and gas produced and sold" and the lessee was to "be reimbursed out of the proceeds derived from the sale of his proportionate part of the oil and gas." The court properly held that the parties were co-owners of the oil produced and hence joint adventurers in the enterprise. The third decision related to an agreement for producing a musical play at defendant's theatre. The plaintiff was to produce the composition, furnish the costumes and scenery and hire and pay the performers. The defendant was to be entitled to recoup the running expenses of the building and to take in the receipts at the box office. It was held that whether or not there was a partnership or joint enterprise a suit would lie against the defendant for an accounting.

In the case at bar the agreements in terms described the relation as creating a lease. They specified that the United States should incur no obligations in tort or contract. Furthermore, the only power of the Secretary of War to enter into such agreements was by way of lease, U.S.C. title 40, § 303 (40 U.S.C.A. § 303), and a joint venture would have been beyond his authority because it would have involved public improvements in excess of any appropriation for that specific purpose. U.S. C., title 41, § 12 (41 U.S.C.A. § 12). If 90 per cent. of the profits was to be expended out of moneys belonging to the government, the agreement was illegal. Accordingly no interpretation requiring such a result should be adopted unless absolutely necessary. We are satisfied that no such construction of the agreements is necessary. Therefore, Mercur Corporation ought not to be regarded as having presented a false claim against the government within the meaning of section 5438 of the Revised Statutes as incorporated in section 3490.

The plaintiff would fare no better if the lease and supplements be thought to have been executed without proper authority because they involved improvements and repairs upon public buildings in excess of appropriations. An unauthorized occupation of government property would not render the defendant liable for the profits which it realized but only as a trespasser for use and occupation. Utah Power & Light Co. v. United States, 243 U.S. 389, 37 S.Ct. 387, 61 L.Ed. 791; Schradsky v. Stimson, 76 F. 730 (C.C.A.8); Watson v. United States, 263 F. 700 (C.C.A.8).

Whether, therefore, Mercur Corporation be regarded as a lessee paying a rent measured by a percentage of the net profits

or as mere trespassers, in neither event has the United States any property interest in the earnings of the Mercur Corporation and in neither event has the latter presented a false claim against the government or its property.

Judgment affirmed.