(No. 11372.—Judgment reversed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* A. V. GRIFFITH, Plaintiff in Error.

*Opinion filed June 21, 1917—Rehearing denied October 9, 1917.*

1. MEDICINE AND SURGERY—*fitting and selling spectacles is not practicing medicine.* Fitting and selling spectacles is not practicing medicine, and one who, for hire, has glasses ground and fitted but does not profess to treat or prescribe for disease or deformity and does not give medical or surgical treatment does not practice medicine.

2. SAME—*statute regulating the practice of optometry is unconstitutional.* The act of 1915, (Laws of 1915, p. 695,) purporting to regulate the practice of optometry, has no apparent connection with the public health, safety, comfort or welfare and is unconstitutional as applied to the facts shown by the record in this case.

3. POLICE POWER—*right of a citizen to pursue any lawful avocation cannot be restricted except by proper exercise of the police power.* The police power may be exercised to regulate any trade, calling or occupation in order to promote the public health, safety and welfare, but the right of a citizen to pursue any lawful avocation cannot be otherwise limited or restricted.

WRIT OF ERROR to the Municipal Court of Chicago; the Hon. WILLIAM N. GEMMILL, Judge, presiding.

H. CLAY CALHOUN, and CHARLES M. HAFT, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, NOAH C. BAINUM, and CHARLES C. BARTLETT, for the People.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

A complaint was filed in the municipal court of Chicago charging that the plaintiff in error, A. V. Griffith, did on the nineteenth day of July, 1916, in the city of Chicago, then and there test eyes and recommend glasses therefor without a certificate, in violation of an act to regulate the

practice of optometry in the State of Illinois. At the trial the defendant presented to the court thirty-five propositions of law, stating that the act under which he was prosecuted was unconstitutional and void, as in conflict with various provisions of the State and Federal constitutions, all of which propositions were refused. The court found him guilty and imposed a fine of $25 and costs, and the record has been brought to this court by writ of error.

The facts proved were as follows: The defendant is a graduate of McCormick Medical College and of the ophthalmic and optical department but was not licensed to practice optometry in this State. A woman who was a licensed optometrist was sent by a member of the State board of optometry to the office of the defendant to find out whether he would violate the statute. She asked to have her eyes tested for reading, and he put on her head a try-frame, in which he could place different lenses to see whether she could read letters which he placed at a distance, and when he found lenses that suited her she contracted to pay him $12.50 for glasses, paid him a dollar and took a receipt.

The act under which the defendant was prosecuted is entitled "An act to regulate the practice of optometry in the State of Illinois, and fixing penalties for the violation thereof." (Laws of 1915, p. 695.) Sections 1 and 2 are as follows:

"Sec. 1. That the practice of optometry is defined to be the employment of any means other than the use of drugs, medicine, or by surgery for the measurement of the power of vision and the adaptation of lenses for the aid thereof.

"Sec. 2. The provisions of this act shall not be construed to apply to physicians duly licensed to practice medicine under the laws of the State, nor to persons who sell spectacles or eyeglasses on prescription from any duly qualified optometrist registered under this act or from any licensed physician, nor to dealers in spectacles or eyeglasses having an established place of business who neither practice nor

profess to practice optometry, nor to the exclusively whole-
sale business of any dealer, or manufacturer."

The act provides for a State board of optometry, which
may examine applicants and issue licenses, and exempts
from examination any person who has practiced optometry
at any established place of business or practice for three
years, who may be licensed on payment of five dollars. The
board may, upon payment of five dollars, grant licenses to
the licentiates by examination of such other boards as shall
prescribe similar recognition of its licentiates. With these
exceptions a person of good moral character, temperate
habits and not less than twenty-one years of age, who has
studied not less than two years in the office of a registered
optometrist or graduated in a school of optometry main-
taining a standard satisfactory to the board, may be exam-
ined, and if the examination is satisfactory to the board
a license is to be granted to him.

Section 1 of the act gives a definition of optometry as
including every means for the measurement of the powers
of vision and the adaptation of lenses for the aid thereof,
other than the use of drugs, medicine or surgery. The
court found, and it is now insisted by counsel, that what
the defendant did consisted of the practice of optometry
under that definition, which is broad enough to include
every measurement of the power of vision and fitting glasses
to aid the vision. It will be observed that section 2 ex-
empts from the requirement of the license to practice op-
tometry, dealers in spectacles or eyeglasses having an estab-
lished place of business who neither practice nor profess to
practice optometry, and others who do not practice it, such
as dealers selling at wholesale, and manufacturers. The
statutory definition covers a very broad and uncertain field,
and there is no proof in the record as to what the practice
of optometry actually is. Such proof was made in *Martin
v. Baldy,* 249 Pa. St. 253, where the court said that optom-
etrists sell or manufacture lenses, either according to their

own judgment or the prescription of physicians, but do not confine themselves to the making of lenses but also examine the eye for the purpose of ascertaining whether there are such defects visible as can be corrected by the application of lenses, and that they do not undertake to determine what disease, if any, exists in the eye which they examine. The definition of optometry in Webster's Dictionary is: "*a.* The employment of subjective and objective mechanical means to determine the accommodative and refractive states of the eye and the scope of its functions in general; *b.* the employment of any means, other than the use of drugs, for the measurement of the power of vision and the adaptation of lenses for the aid thereof." By the statute the second of these definitions seems to have been adopted. The definition of the Standard Dictionary is: "Measurement of the powers of vision in general, as acuteness of perception of form and color or the extent of the field; more narrowly, measurement of the range of vision." The Supreme Court of the United States in *McNaughton* v. *Johnson*, 37 Sup. Ct. Rep. 178, (decided January 8, 1917,) gave the definition of the California statute regulating the practice of optometry, as "the employment of any means, other than the use of drugs, for the measurement of the powers or range of human vision, or the determination of the accommodative and refractive states of the human eye or the scope of its functions in general, or the adaptation of lenses or frames for the aid thereof." Under that statute the State board of optometry was required to examine applicants in the anatomy of the eye in normal and abnormal, refractive and accommodative and muscular conditions and co-ordination of the eye, in subjective and objective optometry, including the fitting of glasses, the principles of lense-grinding and frame-adjusting, and in such other subjects as pertain to the science and practice of optometry. In that case appellant was an ophthalmologist of a school of scientific learning and practice confined to the treatment

of inflammation of the eye and membranes and fitting glasses to the eye, and the only question raised was whether the California act offended the fourteenth amendment to the constitution of the United States by depriving her of her property without due process of law and denying her the equal protection of the law by arbitrarily discriminating against every other school of scientific knowledge and practice in favor of the school of optometry, and it was decided that it did not. The court conceded the discrimination but denied that there was any injury to the appellant, who preferred to practice under the name of one school rather than the other for which a license was required. By that decision it has been settled that discrimination between different schools of practice does not infringe any right secured by the fourteenth amendment, but that question is not involved in this case. The court regarded the statute, with the provisions above cited, as a regulation of the practice of medicine, but in this State it has been settled that fitting and selling spectacles is not practicing medicine, and that one who has glasses ground and fitted and who does not profess to treat or prescribe for disease or deformity and does not give medical or surgical treatment does not practice medicine. (*People* v. *Smith,* 208 Ill. 31.) The statute in question also in express terms excludes the use of drugs, medicine or surgery.

As to what is understood by the practice of optometry, in the great diversity of definitions as to what constitutes the practice without the use of drugs, medicine or surgery, and in the absence of proof, it will be readily seen that there is much uncertainty as to what acts are included in the practice. We must assume, however, as the board and court did and as is now contended by counsel, that what the defendant did was the practice of optometry, and with that assumption the question argued and which must be settled is whether an act requiring a license for doing those things is valid. The police power may be exercised for the

regulation of any trade, calling or occupation for the purpose of securing the public health, safety and welfare, but if an act has no reference to either, the personal liberty of the citizen to pursue any avocation cannot be limited or restricted. (*Bessette* v. *People,* 193 Ill. 334.) The act exempts from examination those who have practiced three years, entirely regardless of moral character, temperate habits, age, skill, knowledge or competency to practice optometry, and prescribes no subjects for examination. What the defendant did was to try different lenses, and when the customer said she could read the letters at a distance she practically decided what glasses would suit her and contracted for them. If changing lenses until the customer was suited, or placing letters at a distance to be read, is measurement of the power of vision and the adaptation of lenses, it is no more than the measurements made by any person who undertakes to fit a person where the person himself decides what answers the purpose. Such measurements, if they are so called, have no relation to the public health, comfort, safety or welfare, such as to require a course of previous study and an examination and payment of a license fee. No reason is given by counsel how the comfort, health, welfare or safety of society is to be promoted by requiring a license for such acts as were done by the defendant. A statute which singles out a particular class of persons and imposes burdens upon them from which other similar classes are exempt, violates their constitutional rights and cannot be sustained. We do not say that it is beyond the power of the General Assembly to enact a statute requiring a previous course of study and an examination of applicants to practice the calling or profession of examining the eye to ascertain if there are defects which can be remedied by the use of lenses, the determination of the accommodative and refractive states of the eye, the range and power of vision and abnormal conditions and the adaptation of lenses to correct defects or to require a license to practice such

calling or profession, but the act now in question, as construed by the parties and counsel, is not within the scope of the powers intrusted to the General Assembly.

The judgment is reversed.        *Judgment reversed.*