STATE, EX REL. ATTORNEY GENERAL, *v.* GUS BLASS COMPANY.

4-4643

Opinion delivered May 10, 1937.

1160

*J. A. Tellier,* for appellant.

*Pat Mehaffy* and *Charles Jacobson,* for appellees.

*Robert Rosenberg, amicus curiae.*

BUTLER, J. Appellant brought this action against appellees in the Pulaski circuit court in accordance with the provisions of § 10325 of Crawford & Moses' Digest. The purpose of the suit was to obtain an order restraining the defendant, Gus Blass Company, a corporation, from engaging in the practice of the profession of optometry and from advertising and holding itself out to the public as being engaged in this profession. The further purpose of the suit was to annul the charter issued by the Secretary of State to the defendant, Vision, Incorporated, which purports to authorize it as a corporation to engage in the practice of the profession of optometry in Arkansas.

Appellant contended that the practice of optometry in Arkansas is a learned profession requiring technical learning and skill; that under the statutes regulating the practice of optometry corporations are incapable of engaging in the practice of the profession and are without power or right to engage therein; that despite the limitations imposed upon it by law and the provisions of its charter, defendant Gus Blass Company is engaged in the practice of the profession of optometry and is advertising in the newspapers and holding itself out to the public as being engaged in the profession; that the defendant, Vision, Incorporated, in procuring its charter from the state of Arkansas through the Secretary of State, has attempted to acquire powers in contravention of law and beyond the power of the Secretary of State to grant in that its charter purports to authorize and empower it to practice and engage in the practice of optometry in Arkansas through the employment of a licensed and registered optometrist; that its charter in this respect is null and void and should be annulled and

vacated and it should be ousted from the state of Arkansas.

The defendants defended on the ground that the court was without jurisdiction of the subject-matter of plaintiff's suit; that the complaint did not state facts sufficient to constitute a cause of action; that act No. 27 of the Acts of 1935, relating to the profession of optometry, does not prohibit a corporation from employing licensed optometrists, but if this act should be so construed, it is unconstitutional as being in contravention of the due process clauses of the state and federal constitutions, to-wit, art. 2, § 8, of the Constitution of the state of Arkansas, and the Fourteenth Amendment to the Constitution of the United States; that act No. 27 of the Acts of 1935 and act No. 123 of the Acts of 1915, governing the practice of optometry, are void as being in contravention of art. 12, § 6, of the Constitution of Arkansas, and are also void because they deny equal protection under the laws, and are in contravention of § 3, art. 2, of the Constitution of the state of Arkansas. The further defense was tendered that The Gus Blass Company had no interest in, or control over, the department of optometry in its store except as the lessor of B. Gainsburg and the optometrist in charge of said department was not the employee of The Blass Company, but of Gainsburg.

Defendant, Vision, Incorporated, filed no answer, but it was announced for it that it had merely obtained its charter and had never engaged in the practice of optometry in the state of Arkansas and had done no act in furtherance of the powers contained in its charter.

The case was submitted to the court sitting as a jury, which, after having heard the evidence, made certain findings of fact and declarations of law, refusing others requested by the appellant, and held as a matter of fact that the defendant, Gus Blass Company, was not practicing optometry, and, without making any formal finding as to Vision, Incorporated, found for the defendant, Gus Blass Company.

It is the appellant's position that under the facts and the law The Gus Blass Company is practicing the profession of optometry in excess of its charter powers and should, therefore, be restrained from continuing to do so; that Vision, Incorporated, is organized for the purpose of practicing optometry; that its charter should be vacated and the corporation ousted from the practice of optometry in the state of Arkansas either directly or indirectly.

The first question raised in the court below involved the authority of the state to bring suit, but that point has been waived on appeal so it passes out of this case and for that reason we refrain from discussing that question.

It was next contended that the act of the Legislature prohibiting the practice of optometry by any but licensed optometrists is unconstitutional, if the act is to be construed as contended for by the appellant. That question is presented and argued at some length in the respective briefs of counsel for the litigants and in the brief of the *amicus curiae,* but this question we pass as our decision may be placed on other grounds.

The two questions most seriously presented are based on (1) the trial court's following declaration of law: "Obviously the practice of optometry is personal, a corporation as such can neither stand the examination nor show qualifications to obtain a license to practice optometry. Therefore this court holds that a corporation cannot practice optometry in this state even though it may employ a licensed optometrist"; (2) that under the evidence The Gus Blass Company is not engaged in the practice of optometry within the meaning of the statute governing that subject.

In developing the contention on the first question, appellant takes the position that optometry is a learned profession, and, as such, the calling itself is protected within the meaning of the statute as well as the public good conserved. In support of this view and the further contention that corporations may not, as such, or acting

through an agent, practice optometry appellant cites the following cases: *State ex rel. Beck, Atty. Gen.* v. *Goldman Jewelry Co.*, 142 Kan. 881, 51 P. (2d) 995, 102 A. L. R. 334; *State* v. *Kindy Optical Co.*, 216 Ia. 1157, 248 N. W. 332; *Eisensmith* v. *Buhl Optical Co.*, 115 W. Va. 776, 178 S. E. 695; *Funk Jewelry Co.* v. *State ex rel. La Prade, Atty. Gen.*, 46 Ariz. 348, 50 P. (2d) 945; *State ex rel. Harris et al.* v. *Myers, Sec. of State*, 128 Ohio St. 366, 191 N. E. 99; *Stern* v. *Flynn, Sec. of State*, 154 Misc. 609, 278 N. Y. S. 598; *State ex rel. Bricker, Atty. Gen.* v. *Buhl Optical Co.*, 131 Ohio St. 217, 2 N. E. (2d) 601.

We find it inexpedient to review these decisions at length with reference to the nature of the so-called "profession" of optometry, but the general deduction may be drawn from these cases where it was either expressly or impliedly held that optometry was a learned profession, that view was reached because of the public policy of the states from which these decisions come which is to be gathered from the language of their particular optometry statutes. This, in the opinion of the courts, placed that profession on the plane of professional ethics and scientific learning as in the generally accepted learned professions. For instance, under the West Virginia statute, optometry is recognized as a profession and forbids one practicing it "to advertise, practice, or attempt to practice under a name other than his own." *Eisensmith* v. *Buhl Optical Co., supra.* The Iowa statutes classify optometry as a learned profession, placing it in the same class with medicine, surgery and dentistry. *State* v. *Kindy Optical Co., supra.*

The weight of authority seems to be opposed to the doctrine of the cases, *supra,* and is to the effect that optometry is only a "profession" within the broader definition of that word, meaning "a vocation," which requires some degree of skill and learning. In *Saunders* v. *Swann,* 155 Tenn. 310, 292 S. W. 458, optometry was classed as an occupation or vocation calling for a degree of mechanical skill and experience, and, in the case of *State ex rel.* v. *Buhl Optical Co., supra,* a case relied upon

by the appellant, the Supreme Court of Ohio, in commenting upon the former case decided by that court holding that optometry is a profession, said that what was stated relating to the status of optometry was not meant to hold that it was a learned profession, but instead that "it was a limited statutory profession."

This was the effect of the decision of the Supreme Court of Pennsylvania in *Harris* v. *State Board,* 287 Pa. 531, 135 Atl. 237, and of the Supreme Court of New Jersey in *New Jersey State Board* v. *Kresge Company,* 113 N. J. L. 287, 174 Atl. 353. See, also, to the same effect the following cases: *People* v. *Griffith,* 280 Ill. 18, 117 N. E. 195; *Jaeckle* v. *Bamberger,* 119 N. J. Eq. 126, 181 Atl. 181; *Dickson* v. *Flynn,* 246 App. Div. 341, 286 N. Y. S. 225; *Dvorine* v. *Castleberry Jewelry Corp.,* 170 Md. 661, 185 Atl. 562; *Vorheis* v. *Kindy Optical Company,* 265 Mich. 265, 251 N. W. 243; *State* v. *Gate City Optical Co., and Sears, Roebuck & Company,* 97 S. W. (2d) 89; *Georgia State Board* v. *Friedmans', Jewelers, Inc.,* 189 S. E. 238.

Those engaged in the practice of optometry are generally, by the statutes of various states including our own, restricted to an analysis and determination of any optical defect by mechanical means and by a system of trial and error. They may not use any drugs, medicine or surgery. It is the opinion of authorities of the highest rank that the various instruments used by optometrists are of but little aid in determining the character of glasses needed by any particular person and that in the final analysis the patient, himself, fits his eyes by a system of trial and error aided by the optometrist—that is to say, optometry is merely an empirical science. Referring to instruments used to look inside the eye in order to study its content and determine whether it is normal or whether there is evidence of disease, it is said: "This cannot properly be done unless drops are used. Also, when the pupil is dilated the physician can, with another little device called the retinoscope, see into the back of the eye and with it measure the length or depth

of the eyeball. When this is done he can accurately prescribe a suitable glass; he knows what to prescribe, and does not have to guess regarding it. The examination of the eyes and the fitting of the glasses without the aid of drops are based on guess work." H. S. Cummins, Surgeon General of the United States, Reprint No. 1235, Public Health Reports of the Treasury Department of the United States. This statement may appear to be a little "strong" and we do not give it complete sanction, but cite it merely for the purpose of indicating the opinion of scientific men as to the nature of the profession of optometry.

We are of the opinion that the Legislature did not attempt to classify optometry as a learned profession, but that it used the term "profession" in its broader and more general meaning. There is nothing in the act to indicate a contrary intention, and we hold that optometry should be classified as a skilled profession, or, more accurately, as defined by the Ohio court, "a limited statutory profession." Therefore, the only legitimate purpose for which our optometry statute was enacted was to promote and preserve public health, or, as expressed in the act itself, "to protect the public against imposition."

The cases cited by appellant which are set out, *supra,* generally hold that a corporation cannot maintain, in its place of business or elsewhere, a department conducted by a licensed optometrist in its employ. Some of these cases proceed on the theory that optometry is a learned profession in the class of law and medicine and that because of this the profession has a right to, and may, be protected by the state and that statutes enacted regulating its practice are not only for the public good, but for the benefit of the calling itself. Other cases are controlled by the peculiar wording of the statutes, such as that of the state of Ohio prohibiting a business for profit being incorporated for the purpose of carrying on the practice of any profession. *State* v. *Myers,* 191 N. E. 99, and followed in *State* v. *Buhl, supra.* In the case of *State* v. *Goldman Jewelry Co., supra,* it was held that a corporation may not engage in the practice of optometry, either

directly or indirectly, through employment of duly registered optometrists. The statute considered in that case is not essentially different from our own except that it prohibits advertisement by the person engaged in the profession of optometry. The court, in support of its decision, cited cases dealing with learned professions where the relationship between the practitioner and the client or patient is of a personal and confidential nature, and further based its decision on the use of the word "person" in the statute and that corporations as such cannot attend the schools dealing with the subject or pass the requisite examinations, and, therefore, could not be registered as optometrists. This is the theory upon, which the case of *Funk Jewelry Co.* v. *State, supra,* was decided. In *Eisensmith* v. *Buhl, supra,* the majority based the decision upon a statute construed as expressly prohibiting the practice of any profession through its employees. *Stern* v. *Flynn, supra,* in holding that a corporation could not practice optometry, placed optometry in the same class as medicine, dentistry or law.

Opposed to the doctrine of these cases are the cases of *Jaeckle* v. *Bamberger; Dvorine* v. *Castleberry Jewelry Corporation; Vorheis* v. *Kindy Optical Company; State* v. *Gate City Optical Company, and Sears, Roebuck & Company; Georgia* v. *Friedmans', Jewelers, Inc.,* and *Neill* v. *Gimbel Bros., supra.* These cases appear to have been decided upon the theory that the practice of optometry is not a privilege to be regulated and licensed as the learned professions both for the protection of the profession itself and of the public, but can be regulated only for the protection of the public and, before such regulatory statutes are passed, is a right common to all persons both natural and artificial. We do not review all of these cases because to do so would unduly extend this opinion and, indeed, would serve no useful purpose as we shall directly show. Typical of these cases, however, is that of *Dvorine* v. *Castleberry Jewelry Corporation, supra,* where the court held that a corporation would not be enjoined from practicing optometry through the agency of others who were duly licensed optome-

trists. The statute there considered is not essentially different from ours in the definition, training required, qualifications and regulation of the practice. It was there held that optometry is not a learned profession, but a mechanical one requiring skill, manual dexterity and knowledge of the use and application of certain mechanical instruments; that in its nature it is empirical rather than learned. To designate optometry as a learned profession is to use the phrase as a trade name rather than to change its historical significance and its use in connection with the practice of optometry is "merely illustrative of a euphemistic trend apparent in recent years of converting age old and common callings into 'something new and strange,' not by changing their characteristics, but by describing them in more dignified and sonorous terms. But, however praiseworthy that purpose may be, it cannot be permitted to obscure or distort actual facts or conditions." Further, the court stated in effect that apart from the statute no question could arise of the right of any one to practice optometry unless his incompetence made such practice a fraud, and that where one is not himself an optometrist there can be no question of his right to hire the services of another who is, and unless the statute forbids such a practice he is not forbidden. Therefore, such a course of dealing would not be practicing optometry, and not within the denunciation of the statute. The court noticed that there is no public policy forbidding the commercialization of optometry as in law and medicine and recognized the general practice of making it a commercial business by advertising glasses for sale, which commonly furnishes a large part of the income from such business.

The reasoning of the case of *Dvorine* v. *Castleberry, etc.,* is practically that of the other cases last cited, *supra,* which appellant would distinguish from the case at bar because no section of that statute defines optometry as defined by our statute. It is clear, however, from reading the opinion that the court had in mind the definition of optometry as it occurs in the dictionaries, between which, and, our statutory definition there is no sub-

stantial difference. The court grounds its decision upon that part of the act prescribing the requirements necessary to pass an examination which, to all intents and purposes, are the same as our own. Indeed, the statutory definition in the Georgia statute is noticed by the court, and, while not using the same phraseology as the Arkansas statute, its meaning is the same when taken in connection with that part of the statute relating to the training and information required of those who are permitted to be licensed.

We have previously observed that in our opinion optometry is not one of the learned professions, and was not intended to be made such by our statute relating to that subject. If the General Assembly had intended to have advanced optometry to the rank of a learned profession it would have doubtless said so in express terms. That it is not such a profession is evident when the history of the science is considered for until quite recently its practice was considered to be a common right in which any one might engage. It was so in this state where the so-called profession was practiced without any regulatory act whatever until the 1915 session of the General Assembly, when, by act No. 123, the practice of optometry was defined, a board of optometry created, the qualifications prescribed, power granted the board to revoke certificates of license for gross incompetency or acts offending against good morals.

The record reflects that The Gus Blass Company and other business concerns in Little Rock conducted optical departments presided over by optometrists who fitted eyes and sold glasses; that this conduct extended over a considerable number of years before and after the passage of act No. 123, *supra,* and until the passage of act No. 27 of the Acts of 1935 relating to the same subject, and since have been, and are now, so engaged without interference from any authority until the institution of the instant suit. This occupation was clearly one of common right and remains so subject to and limited by legitimate statutory regulations. Statutes limiting and

regulating occupations which before were of common right can find no excuse except as they relate to the public and are for its benefit. Statutes of this character are generally considered to be a proper exercise of the state's police power; but the right curtailed still remains unless clearly destroyed by the statute, and this can be accomplished only where it is necessary to attain the end desired. Our statute, act No. 27 of the Acts of 1935, is an enactment of the police power of the state abridging and regulating existent rights, and must be strictly construed. This is a canon of construction universally recognized and stated by our court in numerous decisions, the principle announced therein being well known and citation unnecessary.

It follows that an act of the character above discussed should not be extended by judicial interpretation beyond the clear intent of the General Assembly as discovered in the act itself. We now examine the provisions of act No. 27, *supra,* for any declaration which would prohibit corporations from procuring the services of qualified optometrists to conduct optometrical departments under their direct supervision, and the acts necessary for the conduct of such business be performed by the employees themselves. The applicable provisions of act No. 27 are as follows:

"Section 1. The profession and the practice of optometry is hereby defined to be the employment of any method or means other than the use of drugs, medicine, or surgery, for the analysis of any optical defect, deficiency or deformity, visual or muscular anomaly of the visual system, or the prescribing or the adaption or the duplication of lenses, prisms, or ocular exercises for the correction, relief or aid of the visual functions, or the use of scientific instruments to train the visual system.

"A person practices optometry within the meaning of this act who by any method or means other than the use of drugs, medicine, or surgery, analyzes or determines any optical defect, deficiency of deformity, visual or muscular anomaly of the visual system, or prescribes,

dispenses, adapts or duplicates lenses, prisms or ocular exercises for the correction, relief or aid of the visual function, or holds himself or herself out as being able to do so, shall be deemed to be engaged in the practice of optometry.

"Section 2. No person, except as otherwise provided by law, shall practice optometry until he shall have passed an examination conducted by the board in the subjects of theoretic, practical, and physiological optics, theoretic and practical optometry and in the anatomy, physiology and pathology of the eye, and shall have demonstrated his or her ability to properly use scientific instruments and methods used in the practice of optometry, and shall have been registered and shall have received a certificate or registration which shall have conspicuously printed on its face the definition of optometry set forth in § 1 of this act. Every applicant for examination shall present satisfactory evidence that he or she is over the age of twenty-one years and of good moral character and was graduated from a Class A school in optometry. * * *."

"Section 6. Any person practicing optometry without first procuring a license or a certificate from the board, as provided by law, and registering the same in the office of the circuit clerk of the county in which he practices, shall be guilty of a misdemeanor."

"Section 8. It shall be unlawful for any person, firm, or corporation, either in person or by or through solicitors, or agents, to give or offer to give to any person eyeglasses, spectacles or lenses either with or without frames or mountings as a premium or inducement for any subscription to any book, set of books, magazine, periodical, or other publication, or as a premium of inducement for the purchase of any goods, wares or merchandise, where any charge is made either directly or indirectly, for said eyeglasses, spectacles, lenses, frames or mountings unless the eyes are to be examined and the glasses fitted without additional cost or charge by a physician, surgeon, or optometrist duly authorized by law to practice in this state.

"Whenever any person shall practice optometry outside of or away from his office or place of business, he shall deliver to each person, fitted with glasses by him, a written statement dated and signed by him wherein he shall set out the amount charged, his post office address and the number of his certificate."

"* * *, in interpreting the amendatory statute, we ought to follow the well established rules of statutory construction, and one of those rules is that where a statute is re-enacted in substantially the same form as the old one, the presumption should be indulged that the lawmakers intended no changes other than those clearly expressed in the language of the new statute." *Hendricks* v. *Hodges, Secretary of State,* 122 Ark. 82, 182 S. W. 538.

With this rule of construction announced and the rules before mentioned, we find in the act no express prohibition of the conduct complained of by appellant nor any language from which that prohibition may be fairly implied. In a statute using the word "person," the statutory rule is that it shall include corporations as well as individuals. Section 9727, Crawford & Moses' Digest. Therefore, the word "person" as used in the statute should be interpreted to include corporations. However, if this should not be the case, the former right of corporations to employ optometrists and to engage in the sale of eyeglasses through them is clearly implied by § 8 of the statute which prohibits corporations by name from giving away as a premium as an inducement for the purchase of goods any eyeglasses, etc., unless the eyes are examined and the glasses fitted without additional cost or charge by a physician, surgeon or optometrist duly authorized by law to practice in this state. The only purpose of § 8 was to prevent sales under the guise of a gift and thus practice a fraud or evade the provisions of the statute. When the purpose of the statute is considered, which is the "prevention of imposition" by which the public health and welfare of the people is conserved, where a gift by a corporation is permitted when

the requirements of § 8 are met, surely the Legislature could not have intended to have forbidden a *bona fide* sale of spectacles, if the eyes had been tested and the glasses fitted by a licensed optometrist.

It must be presumed that the statute was passed because the Legislature believed it an aid to public health. The benefit was intended for the public, and not the optometrist. This being the case, there can be no argument that the public health would be conserved by the services of an optometrist working for himself, and not by one working for another. What difference could there possibly be to the public whether their eyes were fitted and glasses furnished by one or the other? To sustain the contention of the appellant would destroy the intent of the Legislature.

In argument, counsel for appellant have called attention to the fact that no exceptions were saved to the declaration of law made by the trial court relating to the nature of the profession of optometry and urged that it was not permissible for a corporation to maintain a department for the sale of reading glasses presided over by a registered optometrist, the necessary examinations being made by him. This question has been argued at length by both parties and directly presented by the appellant in that part of its brief relating to the status of Vision, Incorporated. Moreover, where the decision of the trial court is correct, it will be sustained when supported by principles of law thought by the trial court not to obtain. Therefore, we now hold that under the provisions of our statute the course of conduct of The Gus Blass Company, if the optometrist is its employee, is permissible and not forbidden.

But it is contended by The Gus Blass Company and so found by the trial court that the optometrist in The Gus Blass store was not an employee of that company, and that said company had no connection with the business carried on by the employer of the optometrist, and that the only relation existing between them was that of lessor and lessee. We think that this finding of the trial court was supported by the evidence.

B. Gainsburg and The Gus Blass Company entered into a contract, the substance of which is stated in the findings of the court below, as follows:

"The determining question in this case is whether or not The Gus Blass Company, as shown by the evidence, is practicing optometry. The answer to this question depends on for whom is Dr. Carter working. In other words, whose employee is he? If he is the employee of Gus Blass Company that company is practicing optometry in violation of the statute. If he is in the employ of B. Gainsburg, Gus Blass Company is not practicing optometry in violation of the statute. There is no substantial dispute in the testimony. The facts are as follows:

"In July, 1934, The Gus Blass Company entered into a contract with B. Gainsburg of Harrisburg, Pennsylvania. By the terms of this contract The Gus Blass Company granted the right to B. Gainsburg to conduct an optical department in the department store. By the terms of this contract, Gainsburg was to conduct the department and to purchase and own all the optical goods and accessories of the department and to furnish competent, business-like and efficient employees and to conduct the department in a manner in accordance with the established policies of The Gus Blass Company; further, that only qualified licensed optometrists authorized to practice should be employed. The contract gave to The Gus Blass Company the right to veto any employee or any practice which did not measure up to the store's standard. The employees of the department should be paid by Gainsburg, all goods to be purchased by Gainsburg, all advertising to be paid for by Gainsburg, but to appear within the general advertisement of the store. By this contract a percentage of the net sales should be retained by The Gus Blass Company as compensation for space, janitor services and other services rendered by The Gus Blass Company. Customer credits of the department would be carried by The Gus Blass Company. After paying all the expenses of the department the remainder under the contract would be remitted to Gains-

burg. The contract vested in Gainsburg the sole right and privilege of conducting the department, but to the satisfaction of The Gus Blass Company. That business of the department would be conducted just as the business of the store was conducted. The tenure of the contract is five years, but may be canceled at any time by common consent or after one year.

"In the conduct of the practice under this contract Gainsburg, through his agent, employed the optometrist, supplied the equipment and merchandise and fixtures of the department and the advertisements of the department were carried in the general advertising of the store, but paid for by Gainsburg. Dr. Carter, in charge of the department, reports daily to Gainsburg and Gainsburg pays his salary twice a month by a check from The Gus Blass Company and charged by Gus Blass Company to Gainsburg.

"Under the facts as disclosed by this testimony this court is of the opinion that Dr. Carter is and has been the employee of Gainsburg and not of Gus Blass Company, he was employed by Gainsburg, paid by him, reported to him and was subject to his control. Therefore, he is an employee of Gainsburg. It is not contended in this case that Dr. Carter is not a qualified optometrist, nor that the health of the community would be in any way jeopardized or impaired by his practice. In fact, the proof affirmatively shows that being a graduate of Columbia University, and having obtained his license from the State Board he is amply qualified to conduct the business.

"In view of the facts in this case, this court holds that since Dr. Carter is not in the employ of Gus Blass Company that company is not engaged in the practice of optometry, and the judgment will be for the defendant."

It is contended, however, by the appellant, that certain advertising matter appearing in the Arkansas Democrat and Gazette refutes the conclusion reached by the trial court and conclusively shows the practice of optometry by The Gus Blass Company and the employ of

the optometrist by such company. Many of these advertisements appear in the record, but they are not conclusive of the question. They were circumstances to be considered by the trial court in determining the true relation existing between Gainsburg, The Gus Blass Company and Dr. Carter.

Appellant further contends that the contract itself creates the relationship between The Gus Blass Company and B. Gainsburg of joint adventures. In support of this contention 33 C. J., § 2, page 841, and § 6, page 843, is cited, and it is pointed out that under that authority the relationship of joint adventures is in the nature of a partnership of a limited character, and that a stipulation for a share of the profits as rent does not destroy the agreement as one of lessor and lessee or create a contract for joint adventure. Appellant quotes from that authority, the following: "* * * But, if the agreement goes further and gives to the lessor any control over the business conducted in the leased premises, it is usually construed to constitute the parties joint adventurers in respect to third persons." In further support of its contention, appellant cites the case of *E. D. Bedwell Coal Company* v. *State Industrial Commission et al.,* 157 Okla. 227, 11 Pac. (2d) 527; also, the case of *Merrall et al.* v. *Dobbins,* 169 Pa. 480, 32 A. 578, 579.

The contracts discussed in the cited cases and the conduct of the parties thereunder but slightly resemble the contract and the conduct of the parties in the instant case. In the Oklahoma case the facts were that E. D. Bedwell Coal Company, the pretended lessor, kept almost complete control of the entire enterprise except the physical act of mining the coal. It fixed the price of the product and controlled its sale, using its judgment in such matters, and of the expected profits retained eight per cent. of the sale price less the expense of selling. In the Merrall case, the contract between the parties was for the ostensible lease of hotel properties, but the facts as stated in the opinion clearly showed that it was a joint adventure because the alleged lessor had absolute control and management of the business, and the other party

to the contract merely attended to the details of the enterprise. None of these elements enter into the contract under consideration or its conduct. The only power reserved by the Gus Blass Company was that the optometrist employed by Gainsburg should have the character and qualifications acceptable to it, and that the advertisements of the business be such as met with its approval.

To constitute a joint adventure, there must be the elements of a partnership. As between the parties themselves there must have been an intention to form a partnership as expressed in the contract or gathered from acts of the parties and circumstances which may interpret such agreement. As between themselves or third parties, "there are certain requisites necessary before the law will in any event regard the relationship as that of partners. The requisites of a partnership are that the parties must have joined together to carry on a trade or adventure for their common benefit, each contributing property or services and having a community of interests in the profits." *Meehan* v. *Valentine*, 145 U. S. 611, 12 S. Ct. 972, 36 L. Ed. 835. The doctrine announced in this case was quoted with approval in *Cully* v. *Edwards*, 44 Ark. 423, 51 Am. Rep. 614. That case was followed in *Roach* v. *Rector*, 93 Ark. 521, 123 S. W. 399, in which it was stated in effect that the parties to the contract must be co-principals in the business, and if it is owned by one, and the other receives the profits or a portion thereof, for services or otherwise, the relationship of partners does not exist. Quoting further from that case, it is said: "As between the parties themselves, before it has been said that the relationship of partners has been created, it is essential that the parties themselves intended by the effect of their contract to form such a partnership business, and that they should have a common ownership and community of interest in the properties of the business, and they should share in some fixed proportion in the profits thereof only as profits of the business."

These rules apply not only to a general partnership, but to a limited one, a joint adventure. The facts as

found by the trial court in the instant case and supported by the evidence show that the parties did not intend to form a partnership, that they did not have a common ownership and community of interest in the property of the business, nor did they share in the profits in some fixed ratio. This being true, it follows that the contract was one of lease, that the optometrist was the employee of the lessee, and the trial court correctly gave judgment in favor of The Gus Blass Company.

Affirmed.

SMITH, J., dissents.