Hillsborough, ⎰ No. 3105.
Nov. 7, 1939. ⎱

NEW HAMPSHIRE BOARD OF REGISTRATION IN OPTOMETRY, *& a.*

*v.*

SCOTT JEWELRY CO., *& a.*

*Thomas P. Cheney, Attorney-General (Frank R. Kenison, Assistant Attorney-General* orally),  for the Board of Registration in Optometry.

*Thorp & Branch (Mr. Branch* orally), for the individual plaintiffs.

*McLane, Davis & Carleton (Mr. Perkins Bass* orally), for the defendants.

PAGE, J. For the purposes of this case it may be conceded that the statute does not authorize the registration of a corporation to practice optometry. Whether or not the facts alleged in the bill constitute the practice is a matter upon which the courts have expressed diverse opinions. Under statutes and upon facts more or less similar, it has been held that the employer is practicing optometry illegally, even though the competent optometrist employed by it is fully free to exercise his own judgment in making examinations and prescribing glasses. *Funk Jewelry Co.* v. *State*, 46 Ariz. 348; *State* v. *Company*, 216 Ia. 1157; *State* v. *Company*, 142 Kan. 881; *McMurdo* v. *Getter*, 10 N. E. Rep. (2d), 139; *Stern* v. *Flynn*, 278 N. Y. S. 598; *Eisensmith* v. *Company*, 115 W. Va. 776.

The opposite result has been reached in a number of cases. *State* v. *Company*, 193 Ark. 1159; *Georgia State Board* v. *Jewelers, Inc.*, 183 Ga. 669; *Dvorine* v. *Corporation*, 170 Md. 661; *Attorney-General* v. *Company*, 265 Mich. 265; *State* v. *Company*, 339 Mo. 427; *Jaeckle* v. *Bamberger*, 119 N. J. Eq. 126; *Scadron's Sons Inc.* v. *Susskind*, 229 N. Y. S. 209; *Silver* v. *Lansburgh*, 27 Fed. Supp. 682. It is unnecessary now to decide the controverted question, since the present case is disposable upon procedural grounds alone.

The court will not interfere by injunction on the motion of a public official to prevent the violation of a criminal statute when the violation does not constitute a public nuisance. *Mayor of Manchester* v. *Smyth*, 64 N. H. 380. It was conceded by the plaintiffs that the case just cited declares the general rule of equitable jurisdiction and states an exception that has general acceptance. But the plaintiffs argue that another exception has gained acceptance and that public officers may have recourse to courts of equity for the restraint of the illegal practice of licensed callings, even though such illegal practice is punishable as a crime.

The extent to which this exception has been recognized, and the reasons for it, deserve consideration. But first it should be noted that caution must be exercised in the recognition of new exceptions to the general rule of equity jurisdiction. Although it is true that the punishment of contempt may be constitutional, though the conduct punished be criminal (*In re Debs*, 158 U. S. 564), caution is suggested by the fact that where the defendant is prosecuted at common law he may commonly claim the right to trial by jury. Mere convenience to the State ought not to be permitted to enlarge the scope of equitable jurisdiction in such situations. In the absence of a statute widening jurisdiction, at least, courts should permit

equitable jurisdiction where criminal liability is involved only in accordance with settled principles. With this in mind the cases tending to recognize the new "exception" may be examined.

At the outset we meet a group of cases holding that illegal practice may be enjoined in cases where the statute has specifically authorized such restraint. *State* v. *Fray*, 214 Ia. 53; *State* v. *Howard*, 214 Ia. 60; *State* v. *Company*, 216 Ia. 1157; *In re Maclub of America, Inc.*, 3 N. E. Rep. (2d), (Mass.) 272; *Board of Medical Examiners* v. *Blair*, 57 Utah 516. These cases give us no help, for our statute contains no such specific exception to the general rule.

There is also the group of cases which calls illegal practice a public nuisance. *State* v. *Smith*, 43 Ariz. 131 (but a nuisance only if the unlicensed practitioner is in fact incompetent and the remedy at law inadequate); *Ezell* v. *Ritholz*, 188 S. C. 39; *Redmond* v. *State*, 152 Miss. 54 (but holding that *quo warranto* is the proper remedy); *State* v. *Hartley*, 165 Tenn. 278 (because the statute specifically declared illegal practice to be a public nuisance). In substance the plaintiffs have disclaimed reliance on these cases. We do not regard illegal practice of optometry as a public nuisance, and that view is supported by authority. *Dean* v. *State*, 151 Ga. 371; *People* v. *Association*, 302 Ill. 228; *State* v. *Maltby*, 108 Neb. 578.

There is a group of cases which does not recognize any exception to the general equitable rule but yet permits an injunction against illegal practice where the criminal remedy is inadequate. *Funk Jewelry Co.* v. *State*, 46 Ariz. 348 (where unlicensed practice was not punishable as a crime and there was no remedy at law, unless *quo warranto*); *Kentucky State Board* v. *Payne*, 213 Ky. 382 (where the imposition of the statutory fine of $5 to $20 would not be an effectual remedy); *State* v. *Anderson*, 6 Tenn. Civ. App. 1 (where the defendant might continue his business while in jail and do "incalculable harm" to the public, and criminal proceedings were inadequate because the vicinage was deeply sympathetic with the defendant). Compare also *People* v. *Association, supra,* and *State* v. *Maltby*, 108 Neb. 578.

That leaves the supposed "exception" resting upon a very few cases, among which is *Boykin* v. *Atlanta &c. College*, 177 Ga. 1, where the court granted an injunction restraining the defendant from seeking before the same court an amendment to its charter permitting illegal practice. The court could have refused to approve the amendment without aid of its equity powers. We cannot find that any "exception" exists.

If the State is entitled to relief in equity, it is because it has no adequate remedy at law. The penalty prescribed by the statute for illegal practice of optometry is not trifling; it is a fine of not less than fifty nor more than two hundred dollars. P. L., c. 207, s. 30. Assuming Boisvert's guilt, conviction for two or more violations of the act, with imposition of the fine for one charge and continuance of the other charges for sentence would seem to be as effective as a perpetual injunction. If it could be conceived that similar action against the defendant corporation would not have similar effect, a more summary common-law remedy is at command of the State in *quo warranto* proceedings to oust the corporation from the exercise of powers *ultra vires.* *State* v. *Company,* 142 Kan. 881; *Redmond* v. *State,* 152 Miss. 54; *State* v. *Association,* 163 Tenn. 450.

If the defendant Boisvert is guilty, as charged, of fraud in the practice of optometry, his wrongdoing can be effectually ended by revocation of his certificate by the plaintiff board. P. L., c. 207, ss. 22-26; *Sage-Allen Company* v. *Wheeler,* 119 Conn. 667; *Lawrence* v. *Board,* 239 Mass. 424. The grounds for entertaining any bill in behalf of the State do not appear. We have given the question full consideration, though the statute gives the board no powers of enforcement whatever—only those of granting and revoking licenses to practice—since in default of their power to maintain the bill the Attorney General might seek to intervene in behalf of the State.

We now turn to consideration of the equitable rights of the individual plaintiffs. Here the question is whether "the facts presented show the need of the intervention of equity for the protection of rights cognizable by equity." 40 A. L. R. 1147.

As to the existence of property rights or rights of a pecuniary nature which would warrant persons holding statutory licenses to seek the protection of a court of equity, the true test is a construction of the statute itself, as was pointed out by Mr. Justice *Brandeis* in his dissenting opinion in *Frost* v. *Commission,* 278 U. S. 515, 532, an opinion in which Mr. Justice *Holmes* and Mr. Justice *Stone* joined. "The only property which he asserts would be so taken [without due process of law] is the alleged right to be immune from the competition of persons operating without a valid license [to operate a cotton gin]. But for the statute, he would obviously be subject to competition from anyone. Whether the license ... conferred upon him the property right claimed is a question of statutory construction . . . ." Frost claimed that his franchise was an inviolable contract, but it was remarked (at page 534) that "the limited immunity from com-

petition claimed as an incident of the license was obviously terminable at any moment . . . . It was within the power of the legislature, at any time after the granting of Frost's license, to abrogate the requirement of a certificate of necessity, thus opening the business to the competition of all comers."

One of the earliest cases in which the question of right was raised with respect to the holder of a license to practice was *Merz* v. *Murchison*, 11 Oh. C. C. (N. s.) 458. The plaintiff was a licensed physician. He sought to enjoin unlawful and unfair competition by a chiropractor on the ground the latter had no license. He was denied relief on the ground that the licensing statute conferred no new rights. The object of the legislature, it was held, was to exclude unqualified persons, and "whatever benefit is derived from the statute by those engaged in the practice of medicine and surgery is only incidental. The circle of competition may be narrowed by excluding unlicensed competitors, but that is not the purpose of the law." But where the optometry statute forbids the advertising of free examinations, it has been held that the legislature intended to prescribe a rule of unlawful competition, so that a licensed practitioner is given a property right to be free from it. *Seifert* v. *Company*, 276 Mich. 692. And an act to control the practice of veterinary medicine has been held to confer no property right. *Drummond* v. *Rowe*, 155 Va. 725. And so also of an optometry statute. *State* v. *Company*, 193 Ark. 1159; *Silver* v. *Lansburgh*, 27 Fed. Supp. 682.

These are almost the only cases that approached the question from the standpoint of statutory construction, though the best view recognizes the approach as fundamental. 3 Restatement, Torts, s. 710. The great majority of cases either assume or declare, without aid of construction, that a license confers upon a practitioner a franchise which is of the nature of a property interest. So it has been held that such a practitioner has such a right as may be protected by a court of equity.

Nearly universally, however, this right alone does not determine the success of the plaintiff. He can obtain an injunction only if the defendant's unlawful practice threatens irreparable injury to the right. *Unger* v. *Corporation*, 114 N. J. Eq. 68; *Sloan* v. *Mitchell*, 113 W. Va. 506. Or if criminal proceedings are inadequate. *Dworken* v. *Association*, 38 Oh. App. 265; *Land Title &c. Co.* v. *Dworken*, 129 Oh. St. 23; *Goodman* v. *Company*, 28 Oh. N. P. (N. s.) 272. Or the unlawful intrusion is a series of acts from which the common-law remedies afford inadequate protection. *Fitchette* v. *Taylor*, 191 Minn.

582. Or if the unlawful practice is regarded as a public nuisance injuring his property right. *Ezell* v. *Ritholz*, 188 S. C. 39. Or if he is in a position to show damage (an allegation that plaintiff's practice has "greatly suffered" being bad on demurrer). *Wollitzer* v. *Company*, 266 N. Y. S. 184.

We see no reason to follow *State Bar* v. *Association*, 170 Okla. 246, where there was statutory authority for the plaintiff's proceeding. Or the *dictum* in *Childs* v. *Smeltzer*, 315 Pa. St. 9, where, without showing equitable grounds, it is suggested that a licensed practitioner may enjoin practice by one without a license. Or *Paul* v. *Stanley*, 168 Wash. 371, which seems to hold that all the plaintiff need show is his "franchise." Or *Neill* v. *Gimbel Brothers Inc.*, 330 Pa. St. 213, where an injunction issued without apparent consideration of the plaintiff's right. Whatever may be said about professions so ancient as possibly to have acquired at common law a property right in their professional standing (a matter about which there may be doubt) we are unable to accept the view that a practitioner without a property right may have an injunction to sustain the honor of a department of government which has through itself and other departments all the power necessary for its support. *Depew* v. *Credit Association*, 141 Kan. 481.

It thus appears that the authorities do not support the theory that a practitioner who holds a statutory license has an unbounded right to equitable relief against one practicing without such a license. To the extent, if any, that the right exists, it is pretty narrowly circumscribed by both statutory construction and the general principles of equity.

The rights of the individual plaintiffs are to be ascertained first by a construction of the statute, and secondly by equitable principles. First, have they a franchise, or a property right, or a special privilege giving them a pecuniary interest other and different, or greater than, they possessed independent of the statute? Did the statute add to their rights in the field of competition? Or did it, as was said in *Merz* v. *Murchison*, *supra*, qualify rights theretofore existing, instead of conferring new ones?

If the individual plaintiffs have such enlarged rights, it is by virtue of legislative intention. It may be conceded that before the enactment of the licensing statute, each practicing optometrist had certain rights to the pursuit of his occupation in the nature of property rights, and that a court of equity might in proper circumstances be resorted to by him for the protection of those rights from unfair

competition by others. Were those rights enlarged by the statute so that they include the right to be free from unlicensed competition of whatever nature, whether fair or unfair at common law? Hasty assumptions should not be substituted for reasoned answers.

The State has given to the individual plaintiffs licenses to practice, because it has found them competent. The legislature has provided that incompetents shall have no licenses and no right to practice. To this extent the intent of the legislature has been to take away the privilege of incompetents as they existed at common law. Incidentally, it may be, the licensees have fewer competitors than they would have if the statute had never been enacted. But is the lessened competition a property right of the licensees?

Beginning with a condition of common-law competition, the legislature in some degree suppressed competition. That is, it deprived incompetents of the right to practice. But in so doing, it did not deprive them of property unconstitutionally, because the motive of the regulation was the public health and well-being. The legislative purpose was not at all to benefit competent practitioners, but solely to benefit the public who resort to optometrists for services. It was not the profession that required protection, but the people. There is nothing in our statute to indicate the contrary. Neither licensed practitioners nor their representatives were given, as in some statutes, power to enforce the provisions of the act, even if such power could be construed as usable in protection of private rights of property, as distinguished from public rights.

Instead of that, the legislature has wisely left the enforcement of the act to the normal action of public officials, rather than to the whims of a private group. The act contains no taint of special privilege in any of its provisions. It was passed purely for the public good. If there be, incidentally to the public purpose, any enjoyment by licensed practitioners of decreased competition, that enjoyment can be contracted or determined by the legislature at will in accordance with reasonable conceptions of the health of the public. *Harris* v. *State Board*, 287 Pa. St. 531. If such change be made, no licensed practitioner could claim infringement of his property rights. Regulation of competition was furthest from the legislative mind when the act was passed. Regulation of the public health was their object, and there is no evidence whatever of an intent to add to the competitive property rights of competent optometrists the former "rights" of the incompetent to endanger the health of the public.

The "right" conferred by a license to practice optometry is not in the nature of an exclusive patent to exploit an invention. Nor is it like an inclusive franchise to engage in a public utility. The right of the public to protection of health, asserted by the licensing statute, is not compensated for by any new undertaking on the part of the licensee. The statute imposes upon the licensed practitioner no greater duty towards his patients or the public than he would have had without the license. The most that it accomplishes is to exclude those found to be lacking in reasonable skill. There is no discoverable element of contract in the "franchise" which would imply any such right of property as in the case of a public-service franchise, and no such inherent property by way of discovery or invention as forms the basis of a grant by way of patent.

Such exclusive monopolies as we have just mentioned, often called franchises, have recognizable elements of property totally lacking in a "franchise" to practice optometry. The licensing of optometrists was not intended to create a monopoly. If it be supposed that there are one hundred licensed optometrists, their "rights" are not exclusive or monopolistic in any sense. Their number may be increased indefinitely by the licensing of others found to be competent. *Mushlin* v. *Rowell*, 77 N. H. 183. If the hundred and first candidate be shown upon examination to be incompetent, he will be excluded, not at all for the benefit of the existent licensed practitioners, but solely for the benefit of the public. As of right, the existent practitioners, as such, cannot exclude the incompetent; as of right, only the public can do so by means of its servants, the Board of Examiners. The legislature has evinced no intention of freeing licensed optometrists from competition; the sole apparent intention is to free the public from the practice of incompetents. Public officials are recognized by the act as the sole guardians of the rights contemplated. And there is no room for supposing that exclusion, left in such control, was intended to be for the benefit of the competent licensees.

We therefore decline to accept the view that the individual plaintiffs, or any of them, possess any property right to non-competition by unlicensed persons or persons unlawfully practicing.

The conclusion reached makes it unnecessary to consider whether, if the plaintiffs had property rights, they could resort to equity without alleging facts showing threat of irreparable injury to them, (*Boston & Maine Railroad* v. *Railroad*, 57 N. H. 200; *Williams* v. *Mathewson*, 73 N. H. 242; *Burnham* v. *Kempton*, 44 N. H. 78, 101; *Newcastle* v. *Haywood*, 67 N. H. 178, 179), or alleging that the in-

vasion of their rights is a repeated or continuing wrong for which there is no adequate remedy at law (*Chapman* v. *Company*, 67 N. H. 180, 182). No such facts are alleged or appear.

*Demurrer sustained.*

BRANCH, J., did not sit: the others concurred.